**Billie BRUSH, Petitioner,**

v.

**OFFICE OF PERSONNEL MANAGEMENT,**
**Respondent.**

No. 91–3239.

United States Court of Appeals, Federal Circuit.

Dec. 31, 1992.

William S. Bansford, Neill & Shaw, Washington, DC, argued for petitioner.

Matthew S. Bode, Dept. of Justice, Washington, DC, argued for respondent. With him on the brief were Stuart M. Gerson, David M. Cohen and Terrance S. Hartman, Washington, DC. Of counsel were Jaime Ramon, Thomas F. Moyer and Barbara J. Matthews–Beck, Office of Personnel Management, Washington, DC.

Before MAYER, Circuit Judge, SMITH, Senior Circuit Judge, and MICHEL, Circuit Judge.

EDWARD S. SMITH, Senior Circuit Judge.

Billie R. Brush appeals the initial decision of the Merit Systems Protection Board (MSPB or Board), which became final on 15 February 1991.[1] The Board affirmed the decision of the Office of Personnel Management (OPM) denying Mrs. Brush's application for former spouse survivor annuity benefits. Affirmed-in-part, reversed-in-part, and remanded.

### Issue

The issue is whether the Board's decision affirming OPM's denial of Mrs. Brush's application for former spouse survivor annuity benefits was arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law.

---

1. MSPB No. SF08319010644, 47 M.S.P.R. 122.

## Background

Richard E. Brush died on 29 September 1989. Fifteen days later, petitioner, Billie R. Brush applied to OPM for survivor annuity benefits based upon the death of Richard, her former husband. On 3 April 1990 OPM denied Mrs. Brush's application for a survivor annuity as a former spouse of a retiree because the application was post-marked after 7 May 1989, the filing deadline in 5 C.F.R. § 831.622(a)(1) (1989).[2] Mrs. Brush requested that OPM reconsider its initial decision. On 29 May 1990, OPM denied her request stating that she did not meet the requirements for a survivor annuity as set forth in 5 C.F.R. § 831.622(a)(1). In addition, OPM found that Mrs. Brush was not entitled to a survivor annuity as the "widow" of Richard Brush under 5 U.S.C. § 8341(b)(1) (1988).

Mrs. Brush appealed OPM's decision to the Merit Systems Protection Board. On 22 October 1990, an Administrative Judge (AJ) issued the initial decision of the Board. The AJ affirmed OPM's decision with respect to Mrs. Brush's failure to meet the requirements as set forth in the regulations cited by OPM. The AJ also found that Mrs. Brush was not *otherwise* entitled to an annuity because she did not meet the definition of a widow in 5 U.S.C. § 8341(a)(1) (1988); and because Richard Brush had not made the specific election required by regulations in order for Mrs. Brush to receive a former spouse survivor annuity.[3] Mrs. Brush filed a petition for review before the full Board which was denied, and the initial decision became final on 15 February 1991. She then appealed to the United States Court of Appeals for the Federal Circuit.

## Facts

Billie R. Brush married Richard E. Brush on 24 November 1967. On 21 August 1984 Richard E. Brush submitted an application for immediate retirement from his position with the United States Department of Agriculture. Richard and Mrs. Brush were still married at the time of Richard's retirement. On his retirement forms, Richard elected to receive a reduced annuity in order to provide an annuity to Mrs. Brush if she survived him. His retirement became effective on 16 September 1984.

On 17 November 1987, the Brushes divorced. The divorce decree made no mention of the survivor annuity or retirement benefits, and the couple did not have any children. Richard made no changes in regard to his reduced annuity following the divorce, and he continued to receive a reduced annuity until his death almost two years after the divorce. Richard Brush died on 29 September 1989 as a result of injuries sustained in an airplane crash. On 14 October 1989 Mrs. Brush filed for survivor annuity benefits based upon the death of her former husband. Her application was subsequently denied.

## Standard of Review

The United States Court of Appeals for the Federal Circuit performs a limited review of decisions of the MSPB. The Board's decision must be affirmed unless it is found to be:

(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(2) obtained without procedures required by law, rule, or regulation having been followed; or

---

**2.** Section 127 of Pub.L. No. 100–238 changed the application deadline from 8 May 1987, as provided in the regulation, to 7 May 1989. In addition, the Act, as amended, restricts eligibility to former spouses who attained the age of 50 on or before 7 May 1987, and former spouses whose marriage to the employee or member dissolved after 14 September 1978 and before 8 May 1987. Civil Service Retirement Spouse Equity Act of 1984 (CSRSEA), Pub.L. No. 98–615, 98 Stat. 3195, 3199 (1984), *as amended by* Pub.L. No. 99–251, 100 Stat. 20, 22 (1986), *and* Pub.L.

No. 99–549, 100 Stat. 3063, 3065–66 (1986), *and* Pub.L. No. 99–556, 100 Stat. 3139 (1986), *and* Pub.L. No. 100–238, 101 Stat. 1758 (1988) (codified at 5 U.S.C. § 8341 note (1988)). OPM issued regulations to implement the changes in the CSRSEA at 55 Fed.Reg. 9103 (1990) (codified at 5 C.F.R. § 831.622(a) (1991)).

**3.** 5 C.F.R. § 831.612(a)(2) (1989); 5 C.F.R. § 831.621(a)–(b) (1989).

(3) unsupported by substantial evidence.[4]

*The MSPB Initial Decision*

The Board examined three potential avenues through which Mrs. Brush might have been entitled to an annuity. The Board found that she had failed to meet any of the three. It is important to note that the sections of the U.S.C. and the C.F.R. upon which the Board based its decision are *entitling* in nature. Failure to meet the requirements of one section does not *necessarily* preclude an applicant from meeting the requirements of another section.

*First,* the board found that Mrs. Brush failed to qualify as the widow of Richard Brush as set forth in 5 U.S.C. § 8341. Section 8341(b)(1) states that if an employee dies after retiring and is survived by a widow or widower, the widow or widower is entitled to an annuity.[5] Section 8341(a)(1) defines "widow" as the surviving wife of an employee who:

(A) was married to him for at least 9 months immediately before his death; or

(B) is the mother of issue by that marriage.[6]

Richard and Mrs. Brush were not married for the nine months immediately preceding Richard's death; they divorced on 17 November 1987 and he died on 29 September 1989. Also, there were no issue of the Brush marriage. Hence, by statutory definition, Mrs. Brush could not qualify as Richard's widow, and indeed did not argue in her brief that she was. The Board is affirmed with respect to its determination that Mrs. Brush was not the surviving widow of Richard Brush.

[redacted] *Second,* the Board found, as had OPM, that Mrs. Brush did not meet the five criteria set forth in the regulations for a former spouse survivor annuity.[7] That section states that a former spouse of an employee who retired before 7 May 1985 is entitled to an annuity if: (1) the former spouse's marriage to the employee ended after 14 September 1978 and before 8 May 1987; (2) they were married for at least ten years during periods of the retiree's creditable service; (3) the former spouse has not remarried before age fifty-five; (4) the former spouse files an application for the survivor annuity on or before 7 May 1989; and (5) the former spouse is at least fifty years of age on or before 7 May 1987.[8] This section of the regulations is phrased as a provision that, if met in its entirety, would *grant* Mrs. Brush a survivor annuity. The regulation states that "[t]he former spouse of a retiree who retired before May 7, 1985 ... is entitled, after the death of the retiree ..."[9] to a survivor annuity if all five requirements are met. This language does not act to deny Mrs. Brush any right conferred on her; it is a possible entitling provision. When she applied for the annuity, Mrs. Brush was a former spouse of a retiree who retired before May 7, 1985; Richard Brush retired on 16 September 1984. However, Mrs. Brush did not and could not meet all five of the requirements: she could not file an application before 7 May 1989 (prior to Richard's death), she was not at least fifty on 7 May 1987, and the Brush's divorced after 8 May 1987. The Board is affirmed with respect to its decision that Mrs. Brush did not qualify for a former spouse survivor annuity under 5 C.F.R. § 831.622(a)(1).

*Third,* the Board found that Richard Brush had not made a written election to provide a former spouse survivor annuity as required by the regulations.[10] As applied to this case, that section states that Richard Brush had two years after the date

4. 5 U.S.C. § 7703(c) (1988). *Hayes v. Department of the Navy,* 727 F.2d 1535, 1537 (Fed.Cir. 1984).

5. 5 U.S.C. § 8341(b)(1) (1988).

6. 5 U.S.C. § 8341(a)(1)(A)–(B) (1988).

7. 5 C.F.R. § 831.622(a)(1) (1989). *See supra* note 2 for the legislative history of amendments to the CSRSEA and the subsequent changes in the regulation to implement the amendments to the Act.

8. *Id.*

9. *Id.*

10. 5 C.F.R. § 831.612(a)(2) (1989) (the agency implementation of 5 U.S.C. § 8339(j)(3) (1988)).

that he and Mrs. Brush were divorced to elect, in writing, a former spouse survivor annuity for Mrs. Brush. He did not make the prescribed election during that period, in writing, and died two months before the two year period ended.

### Agency Notice; Annuitant Election

On appeal, Mrs. Brush argues that the election that Richard Brush did make was irrevocable at the time he made the election and that neither the divorce nor subsequent amendments to the law should act to defeat that election. She also maintains that OPM did not notify her former husband of his election rights, and, as a consequence, the election time limit should be waived and OPM should give effect to Richard's intent that Mrs. Brush receive the annuity. OPM maintains that a strict reading of the regulation is required; since Richard Brush did not elect for the annuity in question in writing during the two year period, Mrs. Brush is not entitled to receive it. Also, OPM steadfastly argues that neither statute nor regulation requires OPM to notify retirees of the opportunity to elect former spouse survivor benefits.

■ With regard to Mrs. Brush's argument that the election is irrevocable, we are not persuaded.[11] Subsequent amendments [12] enacted by Congress are given an effective date, and one needs only to look at the statute for Congress' expressed intent as to when an amendment applies. However, Mrs. Brush has correctly interpreted 5 C.F.R. § 831.601(e) (1984) and its effect on her situation; the effect of the divorce on the annuity is governed by the law in effect at the time of the divorce.[13] The election, as stated in 5 C.F.R. § 831.-601(e) (1984), may be changed only as specified in 5 U.S.C. §§ 8339(j) and (k). In essence, the election may be changed in accord with the intent of Congress as stated in its amendments to sections 8339(j) and (k). In 1987, at the time of the divorce, the Spouse Equity Act was the law and does apply to her. However, for the reasons that follow, we are unable to agree with OPM's assertions regarding notice or the Board's holding with respect to the election requirements of 5 C.F.R. § 831.612(a)(2).

### C.F.R. v. U.S.C.

■ This case brings to light a conflict between the notice provision in the Code of Federal Regulations and the statute upon which that regulation is based. OPM maintains that the C.F.R. section does not apply to Mrs. Brush's case. OPM contends that the C.F.R. requires annual notice only in the event the annuitant marries after retirement.[14] Mrs. Brush, on the other hand, argues that the statute requires that notice of rights of election be sent to all annuitants.

The Supreme Court's position on a conflict between a statute and the regulation based upon it is clear. The Supreme Court has stated the following two-step inquiry:

> First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress....

---

**11.** We note, however, that at the time of Brush's death, two months remained of the period within which he still could have complied with the statute and regulations to make the election (which he already had made, in writing at the time of his retirement). The accident of death, before that period expired, terminated his ability to yea or nay that election. The stronger and more plausible inference is that the election he had made, in writing in 1984, and with which he had complied in every respect for five years, in fact became irrevocably restated at the time of his death, which was within the two year period. We need not decide that question, but this record strongly suggests the elements of an estoppel that might be permitted through the

crack left in the door by the language in *Office of Personnel Management v. Richmond,* 496 U.S. 414, 423, 110 S.Ct. 2465, 2470–71, 110 L.Ed.2d 387 *reh'g denied,* 497 U.S. 1046, 111 S.Ct. 5, 111 L.Ed.2d 821 (1990).

**12.** Section 2(3)(A) of the CSRSEA added paragraphs (3) to (5) to 5 U.S.C. § 8339(j) in 1984. Pub.L. No. 98–615, 98 Stat. 3195, 3196–97 (1984).

**13.** Section 831.601(e) was recodified at 831.-611(a) in 1985. 50 Fed.Reg. 20,070 (1985).

**14.** 5 C.F.R. § 831.627 (1989).

[I]f the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.[15]

We look first, as we must, to the plain language of the statute in issue. It states as follows:

> The Director of the Office of Personnel Management shall, on an annual basis, inform each annuitant of such annuitant's rights of election under sections 8339(j) and 8339(k)(2) of title 5, United States Code.[16]

The plain meaning of this provision is that the annual notice is mandatory.[17] The statute is also quite clear in stating the contents of such mandatory notice. The language of the statute requires that *each* annuitant be notified of his rights of election under sections 8339(j) and (k)(2). Out of a sense of super caution "we look to the legislative history to determine only whether there is 'clearly expressed legislative intention' contrary to that language, which would require us to question the strong presumption that Congress expresses its intent through the language it chooses." [18] We find none. There is no restriction in the statute stating that only certain types of elections warrant notice, and there is no legislative suggestion implying such a restriction. The language of this statute is as clear as a glass slipper, there is no shoehorn in the legislative history, and the government, just as surely as Cinderella's step-mother, cannot make the fit. There is no justification for OPM's position that notice need be sent *only* in case of post-retirement marriages.

Contra to our reading of the statute is OPM's position that it must only provide notice in accord with the regulations set forth at 5 C.F.R. § 831.627. That regulation states as follows:

> At least once every 12 consecutive months, OPM will send a notice to all retirees to inform them about the survivor annuity elections available to them, under sections 8339(j) and 8339(k)(2) of title 5, United States Code, in the event of post-retirement marriages.[19]

OPM has taken this section in the C.F.R. to support its position that Mr. and Mrs. Brush do not fall into the group which OPM must notify. While post-retirement marriage is one scenario under sections 8339(j) and (k)(2), post-retirement marriage is by no means the complete menu of possibilities anticipated by sections 8339(j) and (k)(2).

OPM must notify each annuitant annually of his or her rights of election under 5 U.S.C. §§ 8339(j) and (k)(2). The code section which would apply to Mr. and Mrs. Brush is 5 U.S.C. § 8339(j)(3). That statutory section states that Richard Brush had two years after his divorce to elect for Mrs.

**15.** *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694, *reh'g denied,* 468 U.S. 1227, 105 S.Ct. 28, 29, 82 L.Ed.2d 921 (1984).

**16.** Pub.L. No. 95–317, 92 Stat. 382 (1978), *as amended by* Reorganization Plan No. 2 of 1978, § 102, 92 Stat. 3783 (1978) (codified at 5 U.S.C. § 8339 note (1988)).

**17.** *Harris v. Office of Personnel Management,* 888 F.2d 121, 124 (Fed.Cir.1989).

**18.** *Immigration and Naturalization Service v. Cardoza–Fonseca,* 480 U.S. 421, 432 n. 12, 107 S.Ct. 1207, 1213 n. 12, 94 L.Ed.2d 434 (1987) (citations omitted). *See also US West Communications Servs., Inc. v. United States,* 940 F.2d 622, 627 (Fed.Cir.1991) ("Absent clear showing of contrary Congressional intent in the legislative history, the plain meaning of the statute is controlling."); *Thompson/Center Arms Co., Div. of K.W. Thompson Tool Co. v. United States,* 924 F.2d 1041, 1044–45 (Fed.Cir.1991) ("Only very clear evidence of contrary legislative intent can displace the plain meaning of a statute."), *aff'd,* —— U.S. ——, 112 S.Ct. 2102, 119 L.Ed.2d 308 (1992). *Cf. Glaxo Operations UK Ltd. v. Quigg,* 894 F.2d 392, 396 n. 6 (Fed.Cir.1990) (The rule of caution requiring that the legislative history be examined "does not preclude, in a particular case in which the statutory language is so clear as to Congress' intent, the decision that it would be unnecessary to look further into the legislative history.").

**19.** 5 C.F.R. § 831.627 (1989). Section 831.627 was amended by 56 Fed.Reg. 16,263 (1991) to require annual notice also under 5 U.S.C. § 8339(o) (codified at 5 C.F.R. § 831.627 (1992)). The amended regulation implements changes in the law made by section 307 of Pub.L. No. 99–251, 100 Stat. 28–29 (1986) (codified at 5 U.S.C. § 8339(o)(6) (1988)).

Brush a former spouse survivor annuity. This is clearly a right of election that was available to Richard Brush under section 8339(j). While this situation is clearly not a post-retirement marriage as specified in the regulation, there simply is no statutory justification for this regulatory restriction on the distribution of the required notice.

The intent of Congress is clear regarding this issue and, as the Supreme Court has stated, that is the end of the matter. This court must give effect to the statutory mandate as spelled out in Pub.L. No. 95–317. OPM is clearly instructed by Congress to inform annually each annuitant of *all* such annuitant's rights of election under sections 8339(j) and (k)(2). To the extent that 5 C.F.R. § 831.627 purports to instruct OPM otherwise, the regulation must be held to be invalid since it does not comport with the clear statutory mandate.

### Waiver

The Board has previously recognized an implied exception to election requirements which required action within one year of post-retirement remarriage in section 8339(j).[20] Where OPM fails to show that it has complied with the notice requirement under Pub.L. No. 95–317 and the annuitant's conduct is consistent with his having made the election at issue, the Board has either ordered OPM to allow the annuitant to make the election in issue [21] or the Board has ordered OPM to grant the survivor benefits as if the deceased had made a timely election.[22]

In *Davies*, OPM denied the retiree's application to make an election for survivor benefits for his spouse whom he acquired after retirement. The marriage was Davies' second. The wife to whom he was married at the time of his retirement died. The marriage at issue in his case was a post-retirement remarriage. OPM denied Davies' application to elect survivor benefits for his new wife because he had not notified OPM of the remarriage within one year as required in 8339(j).[23] The Board found that OPM had not complied with the mandatory notice provision in Pub.L. No. 95–317 and ordered OPM to grant Davies a reduced annuity with survivor benefits.[24]

This court has previously approved of the Board's approach in *Davies* to the problem presented when OPM fails to meet the burden placed upon it by the clear language of the statute.[25] Both *Darsigny* and *Harris* cite the Board's decision in *Davies* with approval. We agree with our two prior cases in their approval of *Davies*. We hold that the approach summarized above, and followed by the Board in past decisions, is consistent with the statute and Congress' intent that annuitants be afforded the information necessary to make informed decisions regarding their retirement benefits.

There is no meaningful distinction between the one-year limit for post-retirement remarriages faced by the Board in its prior decisions and the two-year limit at issue here. Both of these time limits on election periods are located in the same code section. More importantly, Pub.L. No. 95–317 mandates that notice be sent to all annuitants informing them of all election rights available in sections 8339(j) and (k)(2). The election at issue here is located in section 8339(j)(3); it is subject to the same notice requirement and must be treated the same in the event OPM fails to send the notice mandated by statute.

▮ The onus is, as it must be in a case such as this, upon OPM to show that notice was sent. When a nonfrivolous allegation is made that OPM has not sent the manda-

---

**20.** *Kolbe v. Office of Personnel Management,* 32 M.S.P.R. 626 (1987); *Davies v. Office of Personnel Management,* 5 M.S.P.B. 251, 5 M.S.P.R. 199, 203 (1981).

**21.** *Davies,* 5 M.S.P.R. at 203; *Leyson v. Office of Personnel Management,* 31 M.S.P.R. 111, 114 (1986).

**22.** *Kolbe,* 32 M.S.P.R. at 629.

**23.** *Davies,* 5 M.S.P.R. at 201.

**24.** *Id.* at 203.

**25.** *Harris v. Office of Personnel Management,* 888 F.2d 121, 124 (Fed.Cir.1989); *Darsigny v. Office of Personnel Management,* 787 F.2d 1555, 1559 (Fed.Cir.1986).

tory notice as required by statute, the burden of going forward (or the burden of production) falls to OPM. The statute itself supports this statement, for it is the statute that places the initial burden on OPM to send the statutorily mandated notice of election rights to retirees. Further, OPM carries the ultimate burden of persuasion on the issue whether it sent the mandatory notice. OPM's ability to show that it sent the statutorily mandated notice is an essential element of its case. In addition, OPM is in a position to have knowledge of the particular facts necessary to support its position that it sent notice.[26] The Board's statement that Mrs. Brush did not show that notice was not sent places the burden of production on the wrong party. The Board's statement is contrary to common sense. The burden can not be upon the petitioner in the first instance to prove a negative. OPM presumably has access to the pertinent records, as well as to the people who deal with those records. Thus, the ultimate burden must be on OPM to show that the notice was actually sent.

 In accordance with the statutory mandate, OPM must show two things when attempting to prove that it has met its burden of providing retirees with the notice here in issue. First, OPM must attempt to prove that the notice was actually sent. Such evidence must be more than a bare allegation that notice was sent.[27] Second, OPM must offer proof as to the contents of the annual notice. This must be so, because the statute clearly directs OPM to notify annuitants of all elections available under sections 8339(j) and (k)(2).

 In the event that OPM is able to establish through credible evidence that it is more probable than not that the annual notice was sent,[28] the burden of going for-ward falls upon the petitioner. The petitioner, if able to do so, must put forth such credible testimony or other evidence tending to support the contention that the annuitant in question did not receive the annual notice. The Board must then decide whether it will credit the applicant's testimony, and whether that testimony overcomes the presumption that the notice was received.[29] As in other cases before the Board, evidence regarding the annuitant's conduct (in this case, Mr. Brush) is probative evidence regarding the question whether the annuitant would have made the election in question.

### Office of Personnel Management v. Richmond

Our decision in this case is not inconsistent with the Supreme Court's decision in *Office of Personnel Management v. Richmond.*[30]

Richmond had sought advice from a government employee regarding the limits of income permitted to be earned without diminishing his disability annuity. He relied on the advice, which turned out to be not only from an unauthorized source, but wrong as well. The consequence of Richmond's action was the loss of six months of benefits, for which he brought suit. He claimed the government was estopped to deny his claim because the loss was attributable to his reliance on the erroneous advice. The Supreme Court declined to state a *per se* rule against all estoppel claims and, applying a narrower rule, held that Richmond's claim could not succeed because he not only failed to meet a requirement that "the payment of money from the Treasury must be authorized by a stat-

---

**26.** *See Cheeseman v. Office of Personnel Management,* 791 F.2d 138, 140 (Fed.Cir.1986), *cert. denied,* 479 U.S. 1037, 107 S.Ct. 891, 93 L.Ed.2d 844 (1987); *Lindahl v. Office of Personnel Management,* 776 F.2d 276, 280 (Fed.Cir.1985).

**27.** *Davies,* 5 M.S.P.R. at 202–03 (holding that OPM's offer of a letter stating that notice was sent was insufficient proof). *See Darsigny,* 787 F.2d at 1559 (holding that sworn affidavit of an OPM representative familiar with history of no-tices sent with civil service annuity checks was sufficient proof under the circumstances).

**28.** *Darsigny,* 787 F.2d at 1559.

**29.** *Harris,* 888 F.2d at 124.

**30.** 496 U.S. 414, 110 S.Ct. 2465, 110 L.Ed.2d 387 *reh'g denied,* 497 U.S. 1046, 111 S.Ct. 5, 111 L.Ed.2d 5 (1990).

ute," [31] he even sought an award that was "in direct contravention of the federal statute upon which his ultimate claim to the funds must rest." [32]

### A. Payment Claimed by Brush is Authorized by Statute.

The result in *Richmond* was dictated by the principle that the federal treasury will be protected from the disbursement of monies for a purpose not provided for by Congress. Although Congress did enact a statute that did provide for payment of the disability annuity being received by Richmond, the basic purpose of the statute may fairly be expressed as an intent to provide one economic benefit (disability annuity) as a substitute for another economic benefit (income) that the annuitant could have earned were there no disability. Richmond not only did not meet the substantive economic criteria of the statute, his claim was not even based on the statute; it was based on his reliance on the faulty advice. As the Court held, Congress had not authorized a payment of money from the Treasury to make whole persons who sustain an economic loss attributable to unauthorized and erroneous advice.

██ Congress *has* authorized the payment of money from the Treasury for annuities to survivors of government employees, and Brush claims and is entitled to payment under the authorizing statute. Here again we look to the purpose of the statute, which in essence was to afford this economic benefit in exchange for a reduced annuity elected by the employee. Although Brush cannot claim under the ordinary rules of contract law, it is significant that Congress provided an economic quid pro quo not unlike "consideration" and that Brush, unlike Richmond, has met the economic requirements of the statute. The election by the employee was required to be in writing. Brush made the precise choice provided for, he made it in writing, and he confirmed his election by "paying" the required money. The government was

clearly advised as to Brush's election and as to his economic qualification. He knowingly continued the only required "payment" in full from August 1984 until and after his divorce three years later. The payments continued over a period of two years after his own self interest could have dictated a change, if he had so desired.

We need not speculate why Brush continued this payment to his detriment and to his former wife's benefit for yet another two years, but nothing in the record indicates that he lacked comprehension of his actions, or that he was unaware that he was continuing his election to "pay" for an annuity for Mrs. Brush, or that, if he had been notified, he would not have confirmed his choice by filing the additional piece of paper demanded. Every indication in the record here compels the conclusion that Brush affirmatively desired the annuity for Mrs. Brush. Furthermore, it is clear that he had no reason to believe that he needed to do anything further to effectuate it. One need not strain to perceive the election by Brush, in spite of the agency's failure to give notice. Arguably, he had indeed *made* the very election expected, in writing, at least constructively. And he "paid his dues."

### B. The Payment Claimed is Not in Contravention of the Statute.

In *Richmond* the Court noted that the claimed payment was not only not authorized, it was even claimed "in direct contravention of the federal statute." [33] That is not so in Brush's case. Here, Congress authorized the desired payment benefit, it required an election by the employee, it provided for a corollary "payment" by the employee in exchange for the survivor annuity, and it required the government to notify the annuitant of his rights under the statute. As already stated, all of the substantive qualifying requirements were met by the annuitant, and the only further act provided by the statute for the protection of both parties was omitted by the govern-

---

**31.** 496 U.S. at 424, 110 S.Ct. at 2471.

**32.** *Id.*

**33.** *Id.*

ment, at no detriment to it and to the great detriment of the Brushes. They have not asked for anything that Congress did not intend for the statute to provide and for which they have not met all of the economic requirements. The government was already on notice in writing of the election desired by the employee, and the record in this case is clear that, if the government had issued the mandatory notice, the only requirement would have been for Brush to file a paper in *form* satisfactory to the agency. The only specific requirement complained of by the government was in fact effectively met, and all ensuing economic obligations of the employee were also met. It is specious to argue that the Brushes have not met the specific requirements for their entitlement to this benefit authorized by Congress, or that they are claiming in contravention of the statute.

From the mere recitation that in both *Richmond* and in *Brush*, payment of benefits was denied because of a failure by the annuitant to comply with "a specific requirement," it does not follow that a government agency should be permitted to breach its own statutory duty to notify an annuitant of the need to comply with a technical requirement, and then profit by its own failure.

## C. Failure of the Agency to Meet the Notification Requirement.

OPM is under a very clear and mandatory directive from Congress to provide notice to all annuitants of their rights of election under 5 U.S.C. §§ 8339(j) and (k)(2). It failed to carry out that obligation. This situation was not before the Court in *Richmond*, and it can not be fairly stated that that case was meant to apply when an agency fails to carry out a statutory duty to the detriment of the annuitant.

As this court has previously stated in regard to a similar problem, "[t]o ignore the notice provision ... would be to say that Congress wrote a meaningless provi-

sion into the law." [34] The Supreme Court has also provided instruction to us in our task of resolving conflicting views of a statutory provision. The Court has stated that " '[t]he cardinal principle of statutory construction is to save and not to destroy.' It is our duty 'to give effect, if possible, to every clause and word of a statute.' " [35]

The notice and election requirements are not only for the protection of the public fisc, but protection also of the individual. Here again we look to purpose. Notification protects the government from, among other things, claims that persons seeking entitlement might make in indeterminate circumstances. Congress anticipated that it would be clear, where notice is given, that a claimant acts or fails to act with knowledge with respect to the benefits provided by the statute. Also, Congress' obvious concern for individuals who by reason of age or any other considerations might not be aware of rights intended for them, is reflected in the notice requirement. If the notice reveals incomplete qualification, the employee can respond with knowledge. Here the employee had done everything necessary for the protection of both parties, except to restate in a specific *form*, a choice already known to both parties.

When Brush died, there still was remaining time within which he could have restated that choice. The happenstance of death is not an appropriate hook upon which to hang a finding of deficiency in meeting this technical or "paper" requirement, when all substantive economic requirements have been met. Failure of the agency to issue the notice did not harm the agency. Notice would have merely generated information it already had. But that failure did prevent Brush from being notified of the "paper" requirement, and conclusively so at the time of his death. There is a significant distinction with respect to the facts and the equities presented by *Richmond* and *Brush;* Richmond received erroneous information from a government employee who had no statutory authority

---

**34.** *Kelly v. United States,* 826 F.2d 1049, 1052 (Fed.Cir.1987).

**35.** *United States v. Menasche,* 348 U.S. 528, 538–39, 75 S.Ct. 513, 520, 99 L.Ed. 615 (1955) (citations omitted) (quoted in *Kelly,* 826 F.2d at 1053).

or obligation to provide information, accurate or otherwise, while Brush never received information from a government agency that had an *affirmative statutory duty* to provide it.

D. Payment of the Claim is Not Precluded by OPM v. Richmond.

There is no indication that the holding in *Richmond* was meant to apply when an agency fails to carry out a statutory duty at a detriment to the other party and a benefit to itself. In fact, the indications are otherwise. The Supreme Court expressly did not close the door entirely, even in estoppel cases. It explained:

[W]e need not embrace a rule that no estoppel will lie against the Government in any case in order to decide this case. We leave for another day whether an estoppel claim could ever succeed against the Government.

*Richmond*, 496 U.S. at 423, 110 S.Ct. at 2471.

Failure to recognize the clear intent manifested by Brush's "payment" and other actions, is tantamount to holding that the purpose of the notice statute is to enable an employee to "unelect" the survivor benefits, rather than to elect them. It hangs compliance entirely on the paper requirement of restatement, and ignores all of the other substantive requirements, all of which have been met. The result stands the Congressionally intended policy on its head. Such logic would require us to deny Mrs. Brush her due if her former husband had met all of the economic requirements and had in fact timely restated his election, but on pink paper, where a regulation required submission on blue paper.

The government should not be permitted to *escape* an obligation intended by Congress; certainly not where the money has been appropriated and all of the substantive economic requirements have been met. To treat one technical requirement as if made in the technical manner prescribed, or as having been waived, will support rather than reject the purposes of the statute, and will avoid a clear injustice.

Mrs. Brush maintains that OPM's failure to comply with its mandatory duty should not work to the government's benefit and to her detriment. We agree.

### Conclusion

The Board is affirmed with respect to its decision that Mrs. Brush did not qualify for an annuity as the surviving widow of Richard Brush. The Board is also affirmed as to its judgment that Mrs. Brush did not qualify for a former spouse annuity under 5 C.F.R. § 831.622. The Board is reversed as to its holding that OPM is not required to send annual notice to annuitants of their rights of election and the effect of the lack of notice on the election time periods in 5 U.S.C. §§ 8339(j) and (k)(2). The case is remanded to the Board for further proceedings consistent with this opinion.

### Costs

Each party is to bear its own costs.

AFFIRMED-IN-PART, REVERSED-IN-PART, AND REMANDED

MICHEL, Circuit Judge, concurs in result.