Jeanne A. VALLEE, Petitioner,

v.

OFFICE OF PERSONNEL
MANAGEMENT,
Respondent.

No. 94–3189.

United States Court of Appeals,
Federal Circuit.

June 23, 1995.

Brian G. Goldstein, Kirshenbaum & Kirshenbaum, Cranston, RI, argued for petitioner.

Matthew S. Bode, Atty., Commercial Litigation Branch, Dept. of Justice, Washington, DC, argued for respondent. With him on the brief were Frank W. Hunger, Asst. Atty. Gen., David M. Cohen, Director and Anthony H. Anikeeff, Asst. Director. Of counsel was Jill Gerstenfield.

Before RICH, NEWMAN, and RADER, Circuit Judges.

NEWMAN, Circuit Judge.

Jeanne A. Vallee petitions for review of the decision of the Merit Systems Protection Board, Docket No. BN0831930078–I–1, affirming the Office of Personnel Management's denial of her entitlement to a survivor annuity. Because OPM had failed to give the statutory notice of election rights as required by the Spouse Equity Act, the decision is reversed.

## DISCUSSION

### A

■ In *Brush v. Office of Personnel Management*, 982 F.2d 1554, 1559 (Fed.Cir.1992), this court held that the Civil Service Retirement Spouse Equity Act of 1984, Pub.L. No. 98–615, 98 Stat. 3195 (codified as amended in scattered sections of 5 U.S.C.), requires that OPM "must notify each annuitant annually of his or her rights of election under 5 U.S.C. §§ 8339(j) and (k)(2)." The court in *Brush* referred to 5 U.S.C. § 8339 note, which provides:

§ 5 U.S.C. § 8339 note The [Office of Personnel Management] shall, on an annual basis, in form each annuitant of such annuitant's rights of election under sections 8339(j) and 8339(k)(2) of Title 5, United States Code.

The court in *Brush* rejected the government's position that this notice was required to be sent only in the event of post-retirement marriages, and held that the statutory notice requirement applied to all annuitants who were within the scope of sections 8339(j) and 8339(k)(2) of the Spouse Equity Act. Mr. Brush, who retired in 1984 and was divorced in 1987, was, under the Spouse Equity Act, entitled to elect a survivor annuity in favor of his former spouse. This court held that OPM was required by statute so to inform him. *Brush*, 982 F.2d at 1559.

Mr. Vallee retired in 1982 and was divorced in 1984. He thereafter became, under the Spouse Equity Act, entitled to elect a survivor annuity in favor of his former spouse. Although OPM proposes to distinguish Mr. Vallee's facts from those of Mr. Brush, the Spouse Equity Act does not draw such distinction, and indeed it is undisputed that Mr. Vallee was entitled to invoke the benefits of the Spouse Equity Act. Thus we discern no controlling distinction between Mr. Vallee's situation and that decided by this court in *Brush*.

### B

■ At the time of Mr. Vallee's retirement in 1982, 5 U.S.C. § 8341 provided:

5 U.S.C. § 8341(b)(1) . . . [I]f an employee or Member dies after having retired under this subchapter and is survived by a spouse to whom he was married at the time of retirement, or by a widow or widower whom he married after retirement, the spouse, widow or widower is entitled to an annuity equal to 55 percent . . . of an annuity computed under section 8339(a)–(i) and (*o*) of this title as may apply with respect to the annuitant, or of such portion thereof as may have been designated for this purpose under section 8339(j) of this title, . . .

At the time of the Vallee divorce in November 1984, a former spouse had no right to a

survivor annuity, and an employee could not so provide. A purpose of the Spouse Equity Act, which became effective May 7, 1985, was to authorize an employee to provide for a former spouse:

5 U.S.C. § 8339(j)(3) An employee or Member who has a former spouse may elect ... to have the annuity computed under subsections (a)–(i), (n), and (q) of this section or a portion thereof reduced as provided in paragraph (4) of this subsection in order to provide a survivor annuity for such former spouse under section 8341(h) of this title.... An election under this paragraph shall be made at the time of retirement or, if later, within two years after the date on which the marriage of the former spouse to the employee or Member is dissolved, ...

Also enacted was § 8341 note, which established a transition period whereby an employee who had already retired could elect the benefit of the Spouse Equity Act:

5 U.S.C. § 8341 note [A survivor annuity will be provided if] the retired employee or Member elects, in writing, within eighteen months after the date of enactment of this Act, according to procedures prescribed by the Office of Personnel Management, to have the annuity of such employee or Member reduced under section 8339(j)....

Section 8341 note thus provided an additional window of opportunity for a retiree to elect the rights granted under § 8339(j). Since these rights arise pursuant to 5 U.S.C. § 8339(j), the annual notice provision of 5 U.S.C. § 8339 note, see *supra*, applies, whether these rights are elected during the transition time period provided in § 8341 note, or the permanent time period stated in § 8339.[1] The text is in contrast with the general public notice provision contained in § 4(c) of the Spouse Equity Act, which relates to retirees who marry after retirement.

### C

OPM admits that it did not advise Mr. Vallee that he could elect to provide a survivor annuity for Mrs. Vallee after the divorce. Mr. Vallee's annuity had already been reduced for Mrs. Vallee's survivorship benefit at the time of his retirement, before the divorce. Mr. Vallee declined to eliminate the reduction in his annuity following the divorce, when OPM notified him that he could restore his annuity to its full amount. He continued to receive a reduced annuity until his death in 1992, with former spouse Mrs. Vallee designated as his beneficiary. OPM did not notify him of the need to re-designate her as the beneficiary, despite 5 U.S.C. § 8339 note.

OPM argues that it was not required to notify a retiree who retired before May 7, 1985, the effective date of the Spouse Equity Act, of the election obligations and opportunities of that Act. OPM proposes to distinguish *Brush* on the ground that Mr. Vallee was already divorced at the time the Act came into effect, whereas Mr. Brush was not. However, as this court explained in *Brush*, the notice was intended to be given to those entitled to specific benefits under the Act. The notice form that was sent to Mr. Vallee in 1984 and 1986 was silent on the need to make an election under the Spouse Equity Act. Nor did the notice form state that no survivor annuity would be paid to his divorced spouse even if he continued to reduce his own annuity.

It is incorrect to read a statute contrary to its plain text, absent compelling evidence of contrary congressional intent. Congress specifically required that annuitants would be notified annually of the election rights of §§ 8339(j) and (k)(2). As the court held in *Brush*, the OPM was under an affirmative statutory duty to provide the requisite information to annuitants. 982 F.2d at

---

1. We have considered whether §§ 8341 and 8339(j) were intended to be independent of each other, as the government argues. Section 8341 (entitled "Survivor annuities") sets forth the requirements of entitlement to a survivor annuity, such as relationship of the survivor to the employee, length of employment, etc. Section 8341(h)(1) provides for annuities to former spouses "if and to the extent expressly provided for in an election under § 8339(j)(3) of this title."

Section 8339 (entitled "Computation of annuity") sets forth the mechanics of making an election and computing the amount of the annuity for various categories of employees. The election provision codified as a note to § 8341 also refers to § 8339(j). Together §§ 8341(h)(1) and 8339(j) establish the rights of former spouses to survivor annuities, and it is these rights of which notice must be given.

1559. That duty was not met as to Mr. Vallee. As in *Brush,* the failure of OPM to give the mandated notice excused the retiree's noncompliance with the election requirement.

### D

However, as in *Brush,* in order to authorize payment of the survivor annuity in these circumstances (where the retiree is now dead), there must be evidence sufficient to show that the retiree indeed intended to provide a survivor annuity for the former spouse. 982 F.2d at 1560. In Mr. Vallee's case the evidence is similar to that deemed sufficient in *Brush.* Mr. Vallee had elected a survivor annuity for Mrs. Vallee when he retired. When he was notified in 1984 and again in 1986 of his right to have his annuity restored to its full value after the divorce, he declined to do so. These actions are evidence of the intent to provide a survivor annuity for Mrs. Vallee, and are inconsistent with the contrary position.

We conclude that Mr. Vallee intended to provide a survivor annuity for his former wife, and that the failure of statutory notice excused the absence of re-election. It is ordered that Mrs. Vallee shall be paid the survivor annuity that was elected on her behalf by Mr. Vallee at his retirement, as if the re-election had been duly made.

*REVERSED.*