NEWMAN, Circuit Judge,
dissenting.
This is the rare case in which the intention of the divorcing employee is clear, and was clearly recorded in several official documents. The employee Mr. Downing stated on his official retirement form his intention to provide a survivor annuity for Mrs. Downing, although the divorce was already in process. The OPM rules are designed to protect this intention.
All of OPM’s requirements for a surviv- or annuity were met, including payment of the reduced annuity during the retiree’s life. The two-year window after the divorce, during which any further paperwork could be filed, had not run when the retiree died. Nonetheless, OPM now invokes rules that are designed to protect the interests of all concerned, to deprive the survivor of the annuity that was designated by the employee, and recorded with OPM on his retirement form filed seven months into the divorce proceedings. My colleagues now hold that since Mr. Downing died before he repeated this survivor-ship election, OPM properly can refuse to pay the survivorship annuity. I must, respectfully dissent.
This factual situation is quite different from the usual one, where there is a dispute between past and present surviving spouses of a divorced employee. Here the ailing employee made the formal election of a survivor annuity for his divorcing wife, in writing, on OPM’s retirement form, although the divorce procedures were in process. The divorce decree provided that Mr. and Mrs. Downing would split the reduced annuity; no mention was made in the decree of the survivorship arrangement, which had already been officially communicated to OPM. By the time the divorce became final OPM had been paying the reduced annuity for over two and a half years, reduced because of the surviv-orship election.
The MSPB found “that the appellant notified OPM of the couple’s changed marital status after the time of the divorce,” slip. op. at 7 — 8, and OPM does not dispute its “utilization of the court order to award the appellant a portion of Downing’s retirement annuity (during his life),” id. at 11. This annuity was reduced because of the survivor annuity, and continued to be reduced after the divorce and until Mr. Downing died. However, after his death OPM refused to pay the survivor annuity. OPM states that Mr. Downing was required to make another election to pay a survivorship annuity to Mrs. Downing, within two years after the divorce. Here, Mr. Downing made his intent crystal clear, for he provided the survivor annuity election while the divorce decree was pending. The rules invoked by OPM are designed to implement the intent of its retiring employee and to protect the interests of all involved, not to provide a mechanism for subverting those interests when upon death any oversight cannot be corrected.
This is not a case of changed circumstances or conflicting claimants. OPM was notified, with the divorce decree, that the reduced annuity should be split between Mr. and Mrs. Downing. OPM complied with this instruction until Mr. Downing died, after paying the reduced annuity for four years with no notification that there was some sort of flaw in the survivorship election. Indeed, since OPM’s two-year window after the divorce had not run when Mr. Downing died, there was time to remedy this flaw during the statutory period.
Mr. Downing’s death before the two-year window had closed and OPM’s continued payment of the reduced annuity after the divorce is precisely the situation that this court has noted “strongly suggests the elements of an estoppel that might be per *1380 mitted through the crack left in the door by the language in Office of Personnel Management v. Richmond, 496 U.S. 414, 423, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990).” Brush v. Office of Personnel Mgmt., 982 F.2d 1554, 1558 n. 11 (Fed.Cir. 1992). Rather than view the lack of a reelection prior to death as fatal to the survivor annuity claim, “[t]he stronger and more plausible inference is that the election he had made, in wilting in 1984, and with which he had complied in every respect for five years, in fact became irrevocably restated at the time of his death, which was within the two year period.” Id. The circumstances of Mr. Downing’s election compel the same conclusion. In Brush, the court decided the case based on a lack of notice by OPM, and did not rely on this ground.
Similarly in Simpson v. Office of Personnel Management, 347 F.3d 1361, 1367 (Fed.Cir.2003), this court “conclude[d] that all of the notices of record are defective with respect to someone in Mr. Simpson’s situation,” and that it “need not reach Mrs. Simpson’s argument that her ex-husband’s death within the two-year period after their divorce resulted in an unequivocal restatement of his pre-divorce election.” Though the notices to Mr. Downing were inadequate, for they were buried in fine print and were contravened by OPM’s actual payment of the reduced annuity after the divorce, to the extent that precedent establishes that the annual notice sent by OPM in fine print on the back of the cost of living adjustment notification suffices to inform annuitants of critical conditions affecting their annuity elections, it is time to reach the question left open by Brush and Simpson that is applicable to the unique circumstances of these cases. I would reach that question here and, as in Brush and Simpson, award Mrs. Downing the annuity in accordance with the clearly expressed and noticed intent of the retiree.[1]
At a minimum, if Mr. Downing erred, so did OPM. Section 8339(j)(5)(A) of 5 U.S.C. provides that “[a]ny reduction in an annuity for the purpose of providing a survivor annuity for the current spouse of a retried employee or Member shall be terminated” after the marriage is dissolved. OPM did not comply with this provision, which could have alerted the Downings to any errors. OPM admits that it continued to pay the reduced annuity after it received a copy of the divorce deéree that OPM now states was fatally defective in not reiterating the survivorship election. Nonetheless, when Mr. Downing died, a year and a half after the final divorce decree, OPM refused to pay Mrs. Downing the survivorship annuity. Mr. Downing cannot go back and correct the errors raised by OPM only after his death. This case raises the question of the role of OPM in administering the employment laws fairly and with humanity, in service to those persons who committed their lifetime to federal employment. “The National Government should be a model employer. It should demand the highest quality of service from each of its employees and it should care for all of them properly in return.” Pres. Theodore Roosevelt, Seventh Annual Message, Dec. 3, 1907, available at http://www. presidency ,ucsb.edu/ws/index.php?pid= 29548.
My colleagues on this panel stress that OPM annually sends retirees a boiler-plate reminder of matters that may warrant attention. This reminder did not make clear that Mr. Downing was required to make some sort of additional election, for the *1381 survivor annuity terms were already in place with OPM, and a reduced annuity was already being paid by OPM. When the employee has chosen to receive a reduced annuity in his lifetime and after his divorce in order to provide for a survivor, OPM’s obligation is to assure implementation of the employee’s intent.
My colleagues suggest that the retirement form Mr. Downing signed makes clear that he must re-elect the survivor annuity within two years after divorce. See Maj. Op. at 1375-76, 1377-78. It is far from clear. The statement referred to appears on the sixth page of the ten pages of instructions for Standard Form 2801 and could not reasonably have alerted Mr. Downing to such a critical condition affecting his election, even if these instructions were provided. These instructions are intended to be used to complete the retirement form, not as notice of the need for further action with the final decree or within the ensuing two years. Unlike Braza v. Office of Personnel Management, 598 F.3d 1315 (Fed.Cir.2010) (en banc), where the court held that the form “is explicit enough for the act of signing the form to evidence agreement with the terms of the form,” id. at 1320, the face of the form signed by Mr. Downing does not mention that the election will terminate upon divorce.
OPM acknowledged Mr. Downing’s election of a survivor annuity in a personalized “Explanation of Benefits,” but did not state in that personalized document that his election would be undone by finality of his pending divorce. This “Explanation of Benefits,” dated May 2, 2004, contains a section entitled “Survivor Benefits” that lists Mrs. Downing as the recipient of the survivor annuity elected by Mr. Downing:
SURVIVOR BENEFITS
In the event of your death, your survivors should call our Retirement Information Office at: (1-888) 767-6738. Customers within the local Washington, DC, calling area must call (202) 606-0500.
You elected to provide survivor benefits as follows based upon the full amount of your annuity.
The reduction to provide survivor benefits is made from your basic annual annuity in retirement. There are no separate monthly deductions for providing survivor annuities.
Surviving Spouse
Name: Billye D.
Social Security Number: [XXX-XX-XXXX]
Date of Birth: [xx/xx/xxxx]
Current Gross Monthly Survivor Annuity: $2453.00
App. to Pet’r’s Br., Tab 4, Item No. 3. This notice did not contain the critical information on which OPM now relies, i.e., that the election would be nullified by divorce, although this information could easily have been included in this conspicuous personal notice rather than buried in the fine print of the 10-page general instructions to the retirement form among lots of inapplicable information. OPM was notified of the divorce, and split the (reduced) annuity between Mr. and Mrs. Downing— but gave no notice concerning the need to reiterate the survivor election that supported the reduced annuity. There was no notice that the “irrevocable” survivor annuity election would be revoked unless reelected, even as OPM continued to implement the election by reducing the annuity that was paid before Mr. Downing’s death. Here, there had been an explicit written election at the time of retirement, while the divorce was pending. Mr. Downing’s election was irrevocable without Mrs. Downing’s consent, and no such consent was manifested, or included in the divorce decree or any other document. OPM’s obligation is to give effect to the clear intent of the retiree. Here the intent was clear. OPM’s obligation to Mr. Downing, and to all federal employees, is to assure that their intentions on retirement, and upon death, are conscientiously respected and carried out.

. It is not clear whether Mr. Downing’s personal representative could have renewed the previous election after Mr. Downing’s death and within two years of the divorce. If this path had not been made known to the personal representative, a retroactive election may also be available.