Helen **DARSIGNY**, Petitioner,

v.

**OFFICE OF PERSONNEL MANAGEMENT,** Respondent.

Appeal No. 85–2070.

United States Court of Appeals, Federal Circuit.

April 1, 1986.

Thomas A. Wardlow, Marco, Eagan, Kennedy & Timmis, Grosse Pointe, Mich., submitted, for petitioner.

Richard K. Willard, Acting Asst. Atty. Gen., David M. Cohen, Director, Thomas W. Petersen, Asst. Director and John S. Groat, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., submitted, for respondent; Joseph A. Morris, Gen. Counsel, Thomas F. Moyer, Asst. Gen. Counsel, and Earl H. Sanders, Office of Gen. Counsel, Office of Personnel Management, Washington, D.C., of counsel.

Before SMITH, Circuit Judge, NICHOLS, Senior Circuit Judge, and NIES, Circuit Judge.

NICHOLS, Senior Circuit Judge.

Petitioner Helen Darsigny appeals from the decision of the Merit Systems Protection Board (MSPB), docket No. AT08318410510, 25 M.S.P.R. 676, affirming the denial by the Office of Personnel Management (OPM) of her late husband's election of a survivor annuity. We affirm.

## Background

Maurice Darsigny, petitioner's late husband, retired as a single man from employment with the Department of the Navy in November 1968. On July 18, 1981, Mr. Darsigny married petitioner. On July 1, 1983, Mr. Darsigny received a "Reporting Reminder for Civil Service Retirees," stating that he must promptly notify the OPM if he marries and wants to arrange for a

survivor annuity. Mr. Darsigny so desired and requested a survivor annuity by letter on October 30, 1983. OPM denied the election, giving as a reason Mr. Darsigny's failure to notify OPM of the election within one year of the date of his marriage as required by 5 U.S.C. § 8339(k)(2). Mr. Darsigny requested reconsideration, explaining that he was not aware of, and had never been notified of, the one-year time limit. On March 19, 1984, OPM affirmed its earlier decision, stating that they had no authority to disregard the time limit. Ten days later Mr. Darsigny died. Mrs. Darsigny, substituted pursuant to 5 C.F.R. § 1201.35, appealed to the MSPB.

### Proceedings Below

On appeal, Mrs. Darsigny argued that OPM erroneously held that Mr. Darsigny's lack of awareness of the time limit had no bearing on his election. She asserted that the OPM failed its statutory duty pursuant to Pub.L. No. 95–317, § 3, 92 Stat. 382 (1978) to notify annuitants yearly of their rights of election under section 8339(k)(2). Because notification was lacking, Mrs. Darsigny claimed OPM should grant Mr. Darsigny's election.

The MSPB agreed that the time limit for making such an election may be waived in instances where the retiree has not been given notice of the right to elect a reduced annuity. *See Davies v. Office of Personnel Management*, 5 MSPB 251, 5 M.S.P.R. 199 (1981). The MSPB was not convinced, however, that OPM had failed to notify Mr. Darsigny.

OPM produced the sworn affidavit of its Treasury Liaison Officer, Mr. Nelson T. Henderson. The affidavit stated that Mr. Darsigny's name and address were listed in OPM's computer and that all retirees who received the August 1981 and April 1982 payments had also been sent the August 1981 and April 1982 notices which stated "we must have your written election to provide survivor election for your spouse * * * within one year of the marriage." There being no evidence to the contrary, the MSPB assumed that Mr. Darsigny did

receive those two payments, and concluded that he had received notice of the time limit in 1981 and 1982. The MSPB determined that OPM raised a presumption of receipt by its evidence of bulk mailings which Mrs. Darsigny failed to rebut. The MSPB, affirming OPM's denial, concluded that Mr. Darsigny did not make a timely request and that Mrs. Darsigny had not submitted evidence to render a waiver appropriate. On September 13, 1984, Mrs. Darsigny filed a petition for review. On November 8, 1984, Congress passed the Civil Service Retirement Spouse Equity Act, Pub.L. No. 98–615, 98 Stat. 3195 (1984) (Spouse Equity Act), part of which is set forth below. The MSPB affirmed its initial decision on January 7, 1985. Mrs. Darsigny appealed to the Federal Circuit.

### Analysis
#### Spouse Equity Act

On appeal, Mrs. Darsigny argues that the Spouse Equity Act, enacted during the pendency of her petition to the MSPB, entitles her to a survivor annuity either by giving effect to Mr. Darsigny's election or allowing Mrs. Darsigny to make such an election on his behalf. We do not agree with either point.

■ The first step in the analysis of Mrs. Darsigny's first assertion, that the Spouse Equity Act gives effect to Mr. Darsigny's election, is a study of the language of the statute, for it is well established that the starting point for interpreting a statute is the language itself. That language must govern absent a clearly expressed legislative intention to the contrary. *Consumer Product Safety Commission v. GTE Sylvania*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980); *Ford Motor Credit Co. v. Cenance*, 452 U.S. 155, 159 n. 3, 101 S.Ct. 2239, 2241 n. 3, 68 L.Ed.2d 744 (1981); *Bronger v. Office of Personnel Management*, 769 F.2d 756, 759 (Fed.Cir. 1985), *cert. denied*, —— U.S. ——, 106 S.Ct. 882, 88 L.Ed.2d 918 (1986).

■ The Spouse Equity act provides:

an employee or Member who retired before the one hundred and eightieth day after the date of enactment of this Act and who is married to a spouse acquired after retirement for whom such employee or Member was unable to provide a survivor annuity because \* \* \* the employee or Member failed to notify the office of the employee or Member's post-retirement marriage within one year after marriage, may elect in writing, within one year after the date of enactment of this Act \* \* \* to provide for a survivor annuity for such spouse \* \* \*.

Pub.L. No. 98–615, § 4(c)(2), 98 Stat. 3195, 3206 (1984).

The statute effectuates the election by a retired *employee* made in writing within one year *after* the date of enactment. There is no retroactive provision for an election made before enactment of the Act. That the Spouse Equity Act provides a second chance to employees or members who have survived to exercise it, is borne out by the legislative history. "[T]he retiree may elect in writing within 1 year after the date of enactment, to provide for a survivor annuity for the current spouse." H.R.Rep. No. 1054, 98th Cong., 2d Sess. 18, 27, *reprinted in* 1984 U.S.Code Cong. & Ad.News 5540, 5549, 5557.

Had Mr. Darsigny lived for eight months more, he would have been able to make such a second-chance election. However, it is the judiciary's role to interpret statutes as written, and neither the legislative language nor history give effect to a failed election made prior to enactment, and the intent not to do so is clear. The Act was to restore the election to those alive to exercise it.

■ Mrs. Darsigny's second assertion, that the Spouse Equity Act enables her, as a surviving spouse, to make an election, is equally unavailing. There is nothing in either the statutory language or legislative history to indicate that the surviving spouse who married the employee after his retirement can herself make an election. By contrast, the Act provides for such an election by a surviving spouse divorced

from a retiree. Pub.L. No. 98–615, § 4(b)(1)(B), 98 Stat. 3195, 3205 (1984). As explained by the House Report:

Under the bill, a small class of former spouses of employees or Members who retired or died before the effective date of the Act will be eligible for a special survivor benefit, funded by an appropriation rather than a reduction in the annuity of a retired employee or Member. To qualify an individual must (1) have been divorced after September 15, 1978;\* (2) not have remarried before age 55; (3) have been married during 10 years of creditable service; (4) be age 50 or older; (5) not be entitled to any other pension (other than social security); and (6) apply for the benefit within 2½ years.

---

\* The date in the legislative history appears to be incorrect. The statute, cited in text, refers to September 14, 1978.

H.R.Rep. No. 1054, 98th Cong., 2d Sess. 11, *reprinted in* 1984 U.S.Code Cong. & Ad. News 5540, 5542.

It appears Congress distinguished between a divorced surviving spouse who served, through the working spouse, ten years of creditable time in the Civil Service and a surviving spouse who married a retiree only after the service was ended. It is understandable that the Spouse Equity Act does not provide for the election of a survivor annuity by a surviving spouse acquired after retirement. All of us are aware of the modern notion that a spouse who was such while the annuity was earned, made a contribution to earning it. This cannot be true of a spouse acquired after retirement.

■ Even if the Act itself did not provide for such an election, Mrs. Darsigny argues that her substitution pursuant to 5 C.F.R. § 1201.35 entitled her to make the election on behalf of her husband. Again, we do not agree.

Section 1201.35 provides: "If an appellant dies or is otherwise unable to pursue the appeal, the action shall be completed upon substitution of proper parties \* \* \*." The action for which Mrs. Darsigny was substituted was the appeal from OPM's

denial of Mr. Darsigny's election, and the substitution is limited to the completion of that action. The substitution does not, and cannot, enable Mrs. Darsigny to do more.

*5 U.S.C. § 8339(k)(2)*

██ Mrs. Darsigny argues that OPM failed its statutory duty to notify Mr. Darsigny annually, and that a waiver of the time limitation under *Davies* is appropriate. We cannot agree.

In *Davies,* the MSPB found in 5 U.S.C. § 8339(k)(2) a necessary implication that the statutory election within one year after marriage requires annual actual notice of election rights. 5 M.S.P.R. at 203. In *Davies,* the only evidence of actual notice OPM offered was a letter stating that the notification was sent to annuitant. The MSPB faulted OPM for this, explaining:

> OPM failed to provide testimony or sworn affidavit of the person or persons with firsthand knowledge of the facts to support its assertion that the notice was delivered to appellant, nor did it explain its failure to do so. * * * Nor did OPM corroborate its allegation by presenting documentary evidence from its records showing that delivery of the notice to appellant was effected in September 1978. [Citations omitted.]

5 M.S.P.R. at 202–03.

Unlike the evidence in *Davies,* here OPM submitted the sworn affidavit of Mr. Nelson T. Henderson, the Treasury Liaison Officer, Annuitant Services Division, Office of Retirement Programs, Compensation Group of OPM, a man familiar with the history of notices included with civil service annuity checks. The affidavit noted that Mr. Darsigny received his annuity checks via Electronic Funds Transfer directly to his bank, that the computer generated a tape, listing all annuitants with correspondence address different from payment address, which was sent to the Treasury Department who then mailed the notices according to the tape. Mr. Henderson stated that "no one who received the August 1981 and April 1982 payments could have been missed. Via this procedure, notices must have been sent to Maurice Darsigny since payments for those months were made."

This is about all the proof of notice that appears to us to have been practicable to offer, making it more probable than not that notice was given. The hearsay nature of the evidence is in the circumstances not a concern in an MSPB case. *Richardson v. Perales,* 402 U.S. 389, 400, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Campbell v. Department of Transportation, FAA,* 735 F.2d 497, 502 (Fed.Cir.), *cert. denied,* — U.S. ——, 105 S.Ct. 247, 83 L.Ed.2d 185 (1984). That the record contains a letter from the Darsignys denying knowledge of the time limit is not controlling.

This court does not find the MSPB's conclusion that the election was untimely and a waiver of the time limit unwarranted to be arbitrary, capricious, or unsupported by substantial evidence.

### Conclusion

We affirm the decision of the MSPB and agree that Mr. Darsigny's election of a survivor annuity was untimely and that a waiver of the time limit was unwarranted. We further determine that the Civil Service Retirement Spouse Equity Act does not give effect to the failed election of a retiree who died eight months prior to enactment and does not entitle the surviving spouse whose marriage to the retiree occurred after retirement to make an election herself.

AFFIRMED.