Myrtice **SCHOEMAKERS,** Petitioner,

v.

**OFFICE OF PERSONNEL MANAGEMENT,** Respondent.

No. 98–3144.

United States Court of Appeals, Federal Circuit.

June 22, 1999.

---

within two years of his marriage to her, as the governing statute required. We affirm.

## I

When Conrad Schoemakers retired as a federal employee in 1981, he was unmarried. In October 1990 he married the appellant.

More than four years later, in June 1995, Mr. Schoemakers filed with OPM a request for a survivor's annuity for the appellant, which would have reduced his own retirement annuity. In its initial and reconsideration decisions, OPM denied the request. OPM ruled that Mr. Schoemakers' failure to make the request within two years of his marriage, as the governing statute required, precluded the award of a surviving spouse's annuity. It rejected his request to waive the two-year requirement on the grounds that he did not know about that limitation until the period had expired and had filed his application as soon as he became aware of the requirement. It so ruled because within the two-year period it twice had sent him notice of the requirement.

After extensive administrative proceedings – an initial decision by the administrative judge, the full Board's vacation of that decision and remand for further proceedings, and the administrative judge's second initial decision, which became final when the Board denied review of it – the Board affirmed OPM's reconsideration decision. The Board held that it was "more likely than not that the required notices [of his right to seek an annuity for his spouse] were, in fact, delivered to Mr. Schoemakers," and therefore, he was not entitled to a waiver of the two-year filing requirement on the ground that OPM did not so notify him. The Board also rejected the claim that Mr. Schoemakers' mental condition – which "appears to have interfered with his ability to read and understand the OPM notices that he received" – justified a waiver of the two-year period. It pointed out that "[t]he statute and regulation at issue

David W. Glasser, Glasser and Handel, of Daytona Beach, Florida, argued for petitioner.

Brian S. Smith, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for respondent. With him on the brief were David M. Cohen, Director, and Sharon Y. Eubanks, Deputy Director.

Before PLAGER, Circuit Judge, FRIEDMAN, Senior Circuit Judge, and LOURIE, Circuit Judge.

FRIEDMAN, Senior Circuit Judge.

This is an appeal from a decision of the Merit Systems Protection Board (Board) affirming a decision of the Office of Personnel Management (OPM) that the appellant Myrtice Schoemakers was not entitled to a survivor's annuity because her husband had not applied for such annuity

... make no provision for the waiver of the deadline for the mental incompetency of the annuitant."

During the Board proceedings, Mr. Schoemakers died, and the Board substituted his widow as the appellant.

## II

The governing statute provides:

An employee ... who is unmarried at the time of retiring under a provision of law which permits election of a reduced annuity with a survivor annuity payable to such employee['s] ... spouse and who later marries, may irrevocably elect, in a signed writing received in the Office within two years after such employee ... marries ... [such] a reduction in the retired employee['s] ... current annuity [and thereby provide a survivor's annuity for the spouse].

5 U.S.C. § 8339(k)(2)(A) (1988). Under this provision, Mr. Schoemakers' election of a reduced annuity was untimely. The issue is whether this untimeliness may be excused.

A. Another statutory provision states:

The Director of the Office of Personnel Management shall, on an annual basis, inform each annuitant of such annuitant's rights of election under sections 8339(j) and 8339(k)(2) of title 5, United States Code.

Pub.L. No. 95–317, 92 Stat. 382 (1978), *as amended by* Reorganization Plan No. 2 of 1978, § 102, 92 Stat. 3783 (1978) (codified at 5 U.S.C. § 8339 note (1988)).

■ In *Brush v. Office of Personnel Management*, 982 F.2d 1554, 1559 (Fed. Cir.1992), we held that "the annual notice is mandatory." We recognized an "implied exception to [the two-year] election requirement[ ] ... [w]here OPM fails to show that it has complied with the notice requirement under Pub.L. No. 95–317[.]" *Id.* at 1560. We further stated that the burden is "upon OPM to show that notice was sent," *id.* at 1560, and the contents thereof, *see id.* at 1561. If, however, OPM can "establish through credible evidence that it is more probable than not that the annual notice was sent, the burden of going forward falls upon the petitioner. The petitioner, if able to do so, must put forth such credible testimony or other evidence tending to support the contention that the annuitant in question did not receive the annual notice." *Id.* (footnote omitted).

■ 1. To show that it had sent Mr. Schoemakers annual notices in the two years following his marriage, OPM relied on the affidavit of Mary–Beth Smith–Toomey, the manager of the printing and distribution of forms and notices for OPM's Retirement and Insurance Group, who stated that she was "familiar with the history of notices related to civil service annuity payments." Smith–Toomey stated that "[g]eneral notices regarding survivor elections required by Public Law 95–317 were sent to all annuitants in ... December 1990[and] December 1991," and during this time, such notices "were sent to all annuitants in the same manner." She explained how these notices were sent:

On OPM's computer master annuity roll, separate addresses [were] recorded for purposes of sending payments and for sending correspondence.

\* \* \*

The computer generat[ed] a tape listing of all annuitants and their correspondence addresses which was sent to a private contracting firm specializing in mass mailing.

... The tape thus generated was used to print the name and address directly on franked, printed notices which were then mailed by the contractor.

According to Smith–Toomey, as a result of this process, "a notice was sent to each and every annuitant on [OPM's] rolls at the time of each mailing." A copy of the printed form notice was attached to the affidavit.

*Darsigny v. Office of Personnel Management*, 787 F.2d 1555, 1559 (Fed.Cir. 1986) dealt with a similar affidavit by "a man familiar with the history of notices included with civil service checks." It

stated that "Darsigny received his annuity checks via Electronic Funds Transfer directly to his bank, that the computer generated a tape, listing all annuitants ... which was sent to the Treasury Department who then mailed the notices according to the tape" and that "no one who received the August 1981 and April 1982 payments could have been missed. Via this procedure, notices must have been sent to Maurice Darsigny since payments for those months were made." *Id.* We held that this affidavit was sufficient to prove the sending of the notices. *See id.* Although the affidavit in *Darsigny* did not show the identical practices the affidavit in this case disclosed and, unlike the latter, twice referred by name to the particular annuitant involved, these distinctions do not warrant rejecting the affidavit in this case as inadequate proof that OPM mailed the notices.

■ In *Brush* we required that OPM's evidence "must be more than a bare allegation that notice was sent," and must show "the contents of the annual notices." 982 F.2d at 1561 (footnote omitted). As we have shown, the proof in this case satisfied both requirements. *See id* at 1561 n. 27 (citing *Darsigny* with approval).

■ Mrs. Schoemakers challenges the sufficiency of the affidavit because it described OPM's practices generally, but did not "specifically relate to any notices that were allegedly sent to Mr. Schoemakers during that period." There is no requirement, however, that OPM's proof relate to any specific notices sent to the particular annuitant, as *Darsigny* makes clear. The question simply is whether OPM has "establish[ed] through credible evidence that it is more probable than not that the annual notice was sent." *Brush,* 982 F.2d at 1561. Since there is no claim that Mr. Schoemakers did not receive his annuity payments, his name must have been on OPM's list of annuitants. The affidavit stated that "[g]eneral notices regarding survivor elections were sent to all annuitants" and that, as a result of the procedures OPM followed, "a notice was sent to

each and every annuitant on [OPM's] rolls at the time of each mailing." It is a reasonable inference from these statements that the notices were sent to Mr. Schoemakers.

■ We hold that the affidavit here satisfied OPM's burden. This holding also disposes of Mrs. Schoemakers' other argument that the affidavit was inadequate because it did not include evidence from the contractor who mailed the notices that it had done so, which she claims is a necessary "foundation" to the use of the affidavit. The technical rules of evidence do not apply to Board proceedings, and we reject this contention.

■ 2. OPM having established that the notices were sent, the burden shifts to Mrs. Schoemakers to establish that her husband "did not receive the annual notice." *Id.* The Board did not clearly err in ruling that Mrs. Schoemakers did not sustain that burden.

In her affidavit filed with the Board, Mrs. Schoemakers did not attempt to establish that her husband did not receive the notices. Rather, her affidavit stated that she was normally at work "when the mail arrived, [and] Mr. Schoemakers would bring it from the mailbox in front of the house to the house," that he would "misplace" it, and that as a result several bills went unpaid. She contended that "the notices, if they did arrive, may have been thrown out or misplaced by" her husband. While she also stated that "she never received" the notices, that does not establish that her husband, the annuitant, did not receive them.

■ B. Mrs. Schoemakers contends that, even if Mr. Schoemakers received the notice, because of her husband's "mental state" at the time the notices were sent – her affidavit stated that he had "problems ... with memory" and from "alcohol usage" – she was entitled to a waiver of the two-year statutory period for requesting a survivor's annuity. Although the Board stated that Mr. Schoemakers' "mental condition ... appears to have interfered with

his ability to read and understand the OPM notices that he received," it correctly held that Mrs. Schoemakers was not entitled to a waiver of the filing deadline.

The statute unambiguously states that to obtain a survivor's annuity the annuitant must file with OPM "a signed writing ... within two years after such employee ... marries." 5 U.S.C. § 8339(k)(2)(A). Nothing in either the language or the legislative history even suggests, much less indicates, that Congress intended to permit waiver of the filing deadline because of the annuitant's mental condition.

Where Congress intended to permit the waiver of filing deadlines for government annuitants because of their mental problems, it explicitly so provided. Under 5 U.S.C. § 8337(b), an application for a disability annuity must be "filed with [OPM] before the employee ... is separated from the service or within 1 year thereafter." Congress further provided that

> [t]his time limitation may be waived by [OPM] for an employee ... who at the date of separation from service or within one year thereafter is mentally incompetent[.]

*Id.*

This provision stands in sharp contrast to the unequivocal requirement of filing within two years of marriage in § 8339(k)(2)(A). It strongly indicates that Congress did not intend to permit waiver of that requirement because of the annuitant's mental condition. The cases on which Mrs. Schoemakers relies, in which

agencies excused untimely filings for "good cause," involved time limits imposed by the agency's own regulations, not a deadline provided by Congress.

Like the Board's administrative judge, we sympathize with Mrs. Schoemakers' plight. Neither courts nor administrative agencies, however, have the authority to waive requirements (including filing deadlines) that Congress has imposed as a condition to the payment of federal money. *See Crown v. United States R.R. Retirement Bd.,* 811 F.2d 1017, 1020 (7th Cir. 1987) (quoting *Gressley v. Califano,* 609 F.2d 1265. 1267 (7th Cir.1979) ("A congressional mandate to pay statutory benefits ... leaves no discretion in the agencies and courts but to limit the payment of benefits to those entitled to them.")). In § 8339(k)(2)(A), Congress provided that an unmarried federal annuitant who marries may provide a survivor's annuity for his spouse only if he applies therefore within two years of marriage. Since Mr. Schoemakers did not do that, the Board correctly refused to provide Mrs. Schoemakers with a survivor's annuity.

## CONCLUSION

The decision of the Merit Systems Protection Board is

*AFFIRMED.*