Carole A. SIMPSON, Petitioner,

v.

OFFICE OF PERSONNEL
MANAGEMENT,
Respondent.

No. 03–3015.

United States Court of Appeals,
Federal Circuit.

Oct. 30, 2003.

Diana J. Veilleux, Shaw, Bransford, Veilleux & Roth, P.C., of Washington, DC, argued for petitioner. With her on the brief was Bernard E. Doyle.

Elizabeth Thomas, Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent. On the brief were David M. Cohen, Director; James M. Kinsella, Deputy Director; and Kent G. Huntington, Attorney.

Before MICHEL, LOURIE, and DYK, Circuit Judges.

LOURIE, Circuit Judge.

Carole Simpson appeals from the final decision of the Merit Systems Protection Board affirming the Office of Personnel Management's ("OPM's") denial of her application for a survivor annuity. *Simpson v. Office of Pers. Mgmt.*, 92 M.S.P.R. 210, 2002 WL 1906866 (M.S.P.B. 2002) (*"Final Decision"*). Because we hold that OPM failed as a matter of law to provide adequate notice to Mrs. Simpson's late ex-husband that he needed to take affirmative steps to provide her with a survivor annuity following their divorce, we conclude that the Board erred in finding that Mrs. Simpson is not entitled to receive the annuity. We accordingly reverse and remand for further proceedings consistent with this opinion.

BACKGROUND

Carole and Harold Simpson were married in 1966. *Simpson v. Office of Pers. Mgmt.*, No. PH–0831–00–0273–I–2, slip op. at 3 (M.S.P.B. Apr.26, 2001) (*"Initial Decision"*). They separated in 1987. *Id.* Upon his retirement from government service in 1988, Mr. Simpson elected reduced annuity benefits for himself and a survivor benefit for Mrs. Simpson. *Id.* The couple were divorced in February 1993, amicably

by all accounts, *id.* at 8, and Mr. Simpson continued to receive reduced benefits until his death in June 1994, *see Final Decision* (Separate Opinion of Member Beth S. Slavet), slip op. at 6 n. 3.

In August 1994, Mrs. Simpson applied for the survivor annuity that Mr. Simpson had elected for her in 1988. *Initial Decision,* slip op. at 3. OPM denied her application, stating that the election of survivor benefits had automatically terminated upon the couple's divorce, pursuant to 5 U.S.C. § 8339(j)(5)(A),[1] and that Mr. Simpson had neither reelected the survivor benefit within two years of the divorce nor provided for such a benefit in the couple's divorce decree, as required to reinstate the benefits under 5 U.S.C. § 8341(h)(1). *Id.* at 4.

Mrs. Simpson requested reconsideration, and OPM upheld its decision. *Id.* Mrs. Simpson appealed to the Board. *Id.*

Based on an affidavit from Mary Beth Smith–Toomey, the administrator of OPM's contract for printing and distribution of forms and notices, the Board's administrative judge ("AJ") found that OPM had sent standard notices to all annuitants each year from 1989 to 1994 and in 1996,[2] with information concerning the right of an annuitant to make survivor elections. *Id.* at 6. According to the AJ, Ms. Smith–Toomey's affidavit satisfied OPM's burden of showing that Mr. Simpson was notified of the need to make an election, and the burden then shifted to Mrs. Simpson to prove that Mr. Simpson did not receive the required notices. *Id.*

The AJ credited and found persuasive affidavits from several of Mr. Simpson's friends and relatives, all of whom testified that Mr. Simpson would have wanted to elect a survivor benefit for Mrs. Simpson, irrespective of the couple's divorce. *Id.* at 8. The AJ also credited testimony of Mrs. Simpson and the Simpsons' son that Mr. Simpson had been very careful concerning his financial records, keeping all bills, receipts, payments, and annuity checks for at least the seven years prior to his death, and yet that there was no evidence in his records of his having received a notice requiring reelection of benefits. *Id.* at 8–9. Nonetheless, the AJ concluded that the petitioner had not met her burden, finding "it equally possible that [Mr.] Simpson provided for his former wife to the extent that he wanted to in [the Separation Agreement and his Last Will and Testament] and that he had no intention of providing a survivor annuity," despite what he told his friends and family; and also that it could be that Mr. Simpson only "kept all of the financial records on those matters upon which he acted, but that he did not keep documents on those matters wherein he took no action." *Id.* at 9–10.

Mrs. Simpson appealed to the full Board. The Board issued a 1:1 split decision, resulting in affirmance of the AJ's decision. *Final Decision,* slip op. at 1. This timely appeal followed. We have ju-

---

**1.** That provision states:

Any reduction in an annuity for the purpose of providing a survivor annuity for the current spouse of a retired employee ... shall be terminated for each full month—after the dissolution of the spouse's marriage to the employee ..., except that an appropriate reduction shall be made thereafter if the spouse is entitled, as a former spouse, to a survivor annuity under section 8341(h) of this title.

5 U.S.C. § 8339(j)(5)(A) (2000).

**2.** More specifically, Smith–Toomey's affidavit stated that "[g]eneral notices regarding survivor elections required by Public Law 95–317 were sent to all annuitants in September 1989, September 1990, December 1991, December 1992, December 1993, December 1994, and January 1996."

risdiction pursuant to 28 U.S.C. § 1295(a)(9).

## DISCUSSION

Mrs. Simpson raises three principal arguments on appeal. First, she contends that the government failed to meet its burden of proving that it actually sent the required notice to Mr. Simpson. Second, she argues that the Board erred in finding that the information allegedly provided to Mr. Simpson gave adequate notice that he needed to take affirmative steps to provide her with a survivor annuity following their divorce, notwithstanding his previous election. Finally, Mrs. Simpson asserts that Mr. Simpson's election to provide her with a survivor annuity prior to their divorce became irrevocably restated at the time of his death within the two-year period for making an election. Mrs. Simpson cites *Brush v. Office of Personnel Management*, 982 F.2d 1554 (Fed.Cir.1992), for the proposition that "[t]he accident of death, before that [statutory] period [for making an election] expired, terminated his ability to yea *or* nay that election," and, thus, "the election he had made, in writing [at the time of his retirement], . . . in fact became irrevocably restated at the time of his death, which was within the two year period." *Id.* at 1558 n. 11.

The government responds to Mrs. Simpson's first argument by arguing that, under this court's decision in *Schoemakers v. Office of Personnel Management*, 180 F.3d 1377 (Fed.Cir.1999), Smith–Toomey's affidavit stating that annual notices were sent to all annuitants sufficed to meet the government's burden of establishing that an annual notice was sent to Mr. Simpson during the relevant period, and that the burden then shifted to the annuitant to come forward with evidence that the notice was not received. *Id.* at 1380–81. According to the government, the Board therefore properly ruled that Mr. Simpson was sent the required notices and that Mrs. Simpson failed to demonstrate that Mr. Simpson had not received them.

In response to Mrs. Simpson's second argument, the government, citing this court's decisions in *Holder v. Office of Personnel Management*, 47 F.3d 412 (Fed. Cir.1995), *Wood v. Office of Personnel Management*, 241 F.3d 1364 (Fed.Cir. 2001), and *Hairston v. Office of Personnel Management*, 318 F.3d 1127 (Fed.Cir. 2003), argues that the language of the annual notices sent by OPM has "been held to be generally sufficient to provide sufficient notice to an annuitant in the absence of some other OPM communication that might have confused the annuitant regarding his or her annuity election obligation following a divorce, even if the language is not a model of clarity." The government thus asserts that, "[b]ecause Mrs. Simpson could not rebut the record evidence that [Mr. Simpson] received OPM's notices, the MSPB properly concluded that Mr. Simpson was warned that he needed to take steps if he wanted to provide her a former spouse annuity."

Finally, the government responds to Mrs. Simpson's third argument that there is no precedent for holding that an annuitant who fails to make an election should be deemed to have done so if he or she dies prior to the expiration of the time period for making an election, and that, on the contrary, this court rejected similar arguments in *Belanger v. Office of Personnel Management*, 1 F.3d 1223 (Fed.Cir. 1993), and *Darsigny v. Office of Personnel Management*, 787 F.2d 1555 (Fed.Cir. 1986). The government further argues that *Brush* can be distinguished on the ground that OPM had conceded in that case that it had not sent *any* annual notices to the annuitant.

Congress has expressly limited the scope of our review in an appeal from the Board. Specifically, we must affirm a de-

cision of the Board unless it was "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c) (2000). "Substantial evidence" is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938). A review for substantial evidence involves examination of the record as a whole, weighing "evidence that both justifies and detracts from an agency's decision." *In re Gartside*, 203 F.3d 1305, 1312 (Fed.Cir.2000). The Supreme Court has explained that "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620, 86 S.Ct. 1018, 16 L.Ed.2d 131 (1966).

We agree with Mrs. Simpson that OPM's notice was legally deficient in that it failed to adequately inform Mr. Simpson that, if he still intended that his former spouse receive an annuity, he must make a new election within two years of their divorce. Public Law 95–317, 92 Stat. 382 (1978), as amended by Reorganization Plan No. 2 of 1978, § 102, 92 Stat. 3783 (1978) (codified at 5 U.S.C. § 8339 note (1988)), states that "[t]he Director of the Office of Personal Management shall, on an annual basis, inform each annuitant of such annuitant's rights of election under sections 8339(j) and 8339(k)(2) of title 5, United States Code." In relevant part, 5 U.S.C. § 8339(j)(3) provides that:

An employee ... who has a former spouse may elect, under procedures prescribed by the Office, to have the annuity computed under subsections (a)-(i), (n), and (q) of this section or a portion thereof reduced as provided in para-

graph (4) of this subsection in order to provide a survivor annuity for such former spouse.... An election under this paragraph shall be made at the time of retirement or, if later, within 2 years after the date on which the marriage of the former spouse to the employee or Member is dissolved....

Moreover, 5 U.S.C. § 8341(h)(1) provides that:

[A] former spouse of a deceased employee ... is entitled to a survivor annuity under this subsection, if and to the extent expressly provided for in an election under section 8339(j)(3) of this title, or in the terms of any decree of divorce or annulment or any court order or court-approved property settlement agreement incident to such decree.

These statutes provide that an employee may elect an annuity for a former spouse and that such an election must be made within two years after the marriage has been dissolved. A former spouse for whom such an election is made is entitled to an annuity.

OPM's notices of record fail to comply with the statutory requirement of notice because an annuitant who elects an annuity for his (or her) spouse while married reasonably expects that he has complied with the statute sufficiently to cause the annuity to be paid on his death. At the time of his divorce, Mr. Simpson had already made an election. The problem was that he did not make that election after the divorce, and OPM's notice did not state that he had to do so again even if he had previously made such an election. Mr. Simpson had no reason to know that his election must be renewed following a divorce if he still intended that his former spouse receive the annuity. It is the statutory purpose of a notice to adequately inform an annuitant of the requirements that must be met for a spousal annuity to

be provided. Thus, an annual notice is deficient when it fails to inform an annuitant that, even if he had previously elected a spousal annuity when married, he must make a new election after his divorce.

In *Brush* we held that "OPM must show two things when attempting to prove that it has met its burden of providing retirees with the notice here in issue. First, OPM must attempt to prove that the notice was actually sent.... Second, OPM must offer proof as to the contents of the annual notice." 982 F.2d at 1561. We do agree with the government that the AJ's finding that a notice was sent to Mr. Simpson during the relevant time period was supported by substantial evidence. Smith–Toomey submitted an affidavit stating that a general notice was sent to all annuitants, including Mr. Simpson, each year, including, of special relevance here, in December 1993 (*i.e.*, after the Simpsons' divorce). Moreover, we held in *Schoemakers* that a similar affidavit, also from Smith–Toomey, satisfied the government's burden of establishing that notice was sent. 180 F.3d at 1380–81. Nonetheless, although Smith–Toomey's affidavit may have met the government's burden of showing that *a* notice was sent to Simpson, there is no indication in the affidavit or anywhere else in the record that a notice was sent that informed Mr. Simpson that he needed to make a reelection.

The record includes four undated notices, all including a section entitled "Information and Reminder About Survivor Annuity Benefits," any or none of which might have been the notice that was actually sent to Simpson in 1993. No purpose would be served by quoting the notices in the record here, as the government's attorney conceded during oral argument that it is unknown which, if any, of the notices was sent, but that the actual notice would have likely been similar, if not identical, to the notices in the record. Each of the notices in the record is legally deficient, because none of them contains any statement that a pre-divorce election automatically terminates upon divorce and that an annuitant must make a new election to provide a survivor annuity for a former spouse. That fact is not disputed by the government.

The government argues that *Holder* supports its position. We do not agree. We held in *Holder* that a notice similar to a section of two of the notices in the present record had "reasonably informed [the annuitant] of his former spouse election rights," 47 F.3d at 415. This case is different from *Holder*, however. It raises the question, not discussed in *Holder*, whether an employee who makes an election for a spousal annuity was properly notified that he must make a *reelection* after a divorce in order to provide such an annuity for a former spouse. *Holder* dealt with the question whether OPM's notice informed Mr. Holder that he needed to make an election by a certain date following the implementation of a new regulation. The notice in *Holder* was unequivocal, stating " '[s]uch an election must be filed in writing with the OPM no later than September 8, 1987.' " *Id.* We held that "[t]his language informed Mr. Holder that he was required to make an affirmative election with OPM by September 8, 1987 for Ms. Holder to receive a survivor annuity." *Id.* Thus, the issue in *Holder* was quite different from the issue here. The government's reliance on *Hairston* is similarly deficient, as merely quoting and relying on *Holder*, but also finding for the survivor.

The government also relies on *Wood.* However, in *Wood* we reversed a decision of the Board under circumstances similar to those at issue here. In that case, the annuitant, Mr. Wood, had written to OPM in August 1986 to ask whether or not his

wife would still be entitled to previously elected survivor benefits if he divorced her and did not remarry. In response, OPM sent a letter identifying three ways in which the former spouse of a retired federal employee could obtain a former spouse survivor annuity. A hand-written note on the letter also stated that Mr. Wood should notify OPM if his marriage ever was terminated. The Woods' divorce decree issued in December 1986; Mr. Wood failed to notify OPM of that fact, but instead continued to receive a reduced annuity until his death in 1998. After her application for survivor benefits was denied by OPM, Mr. Wood's ex-wife appealed to the Board, which affirmed OPM's decision, and then to this court.

Reversing the Board's decision, we held that the letter sent to Mr. Wood was defective because it made no mention of a requirement that he make an election after the divorce, and it did not inform him that his continued receipt of a reduced annuity would not suffice to constitute an election. *Wood,* 241 F.3d at 1367. Under the circumstances, we concluded, Mr. Wood could have reasonably believed that he was not required to do anything else to provide his ex-wife with an annuity. Although annual notices similar to those approved in *Holder* were also sent to Mr. Wood in December 1986 and December 1987, we distinguished *Holder* on the basis of the confusing notices that had been sent to Mr. Wood before the election period. *Id.*

Likewise, although the annual notices sent to Mr. Simpson may have contained language similar to the December 1987 notice that we approved in *Wood,* those notices were nonetheless defective for the following reason. The notices here have a section entitled "Events Which *May* Increase Your Annuity" (emphasis added),

which states that, "[i]f your annuity is now reduced to provide a survivor annuity[?][3] spouse, former spouse, or 'insurable interest' beneficiary[?] reduction *can* generally be eliminated if one of the following ev[?] occurs: Your marriage to your current spouse ends by death, divorc[?] annulment.... Notify us in writing if any of the above events occurs ...." (emphasis added). The language used in that section's title and corresponding text would reasonably lead an annuitant to conclude that his earlier election of a survivor annuity would remain in effect as long as he continued to accept a reduced annuity, but that he could optionally increase his annuity if his marriage ended. Thus, *Wood* supports Mrs. Simpson more than it does the government.

Finally, *Brush* also supports Mrs. Simpson's appeal. In *Brush* we held that "annual notice is mandatory," 982 F.2d at 1559, and observed that:

> The Board has previously recognized an implied exception to [the] election requirements ... in section 8339(j). Where OPM fails to show that it has complied with the notice requirement under Pub.L. No. 95–317 and the annuitant's conduct is consistent with his having made the election at issue, the Board has either ordered OPM to allow the annuitant to make the election in issue or the Board has ordered OPM to grant the survivor benefits as if the deceased had made a timely election.

*Id.* at 1560. The latter course of action is appropriate in this case, because, as we noted in *Wood,* "[i]n both *Brush* and *Vallee* [v. Office of Personnel Management, 58 F.3d 613 (Fed.Cir.1995)], this court found that an employee's continued acceptance of a reduced annuity following divorce, stand-

---

**3.** The right-hand margins of the two notices were cut off from the copies in the record.

The missing text is indicated herein as "[?]."

ing alone, adequately demonstrated that employee's intent to provide a survivor annuity for the former spouse." 241 F.3d at 1368; *see also Hairston,* 318 F.3d at 1130 ("Evidence that the employee, upon retirement, elected to provide a spousal annuity, and after divorce declined to restore benefit payments or did not object to the continued discounted payment consistent with election of a spousal annuity is sufficient to prove the employee intended to provide a former spouse survivor annuity."). Moreover, regrettably, Mr. Simpson, being deceased, is no longer able to make a reelection himself. The Board is therefore instructed to order OPM to grant Mrs. Simpson the former spouse survivor annuity as if Mr. Simpson had made a timely reelection.

Because we conclude that all of the notices of record are defective with respect to someone in Mr. Simpson's situation and that Mrs. Simpson was improperly denied a former spouse survivor annuity, we need not reach Mrs. Simpson's argument that her ex-husband's death within the two-year period after their divorce resulted in an unequivocal restatement of his pre-divorce election.

## CONCLUSION

The Board's decision is reversed and remanded for further proceedings consistent with this opinion.

*REVERSED AND REMANDED.*