# United States Court of Appeals for the Federal Circuit

---

**BILLYE D. DOWNING,**
*Petitioner,*

v.

**OFFICE OF PERSONNEL MANAGEMENT,**
*Respondent.*

---

2010-3043

---

Petition for review of the Merit Systems Protection Board in DA0831090342-I-1.

---

Decided: September 20, 2010

---

BILLYE D. DOWNING, of West Columbia, Texas, pro se.

HILLARY A. STERN, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent. With her on the brief were TONY WEST, Assistant Attorney General, JEANNE E. DAVIDSON, Director, and TODD M. HUGHES, Deputy Director.

---

Before NEWMAN, MAYER, and PROST, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* PROST.

Dissenting opinion filed by *Circuit Judge* NEWMAN.

PROST, *Circuit Judge*.

Petitioner Billye D. Downing petitions for review of the final decision of the Merit Systems Protection Board ("Board"), which affirmed the reconsideration decision of the Office of Personnel Management ("OPM") denying her request for former spouse survivor annuity benefits under the Civil Service Retirement System ("CSRS"), 5 U.S.C. § 8331 *et seq.* Because her former husband, Randall Scott Downing, did not reelect former spouse survivor benefits for her within two years following their divorce and the divorce decree makes no mention of a survivor annuity, we affirm.

## BACKGROUND

The Downings were married on December 18, 1965. On July 28, 2003, Ms. Downing filed for divorce, which did not become final until October 2006. When Mr. Downing retired from the United States Department of the Army on March 3, 2004, he elected to provide a survivor annuity for Ms. Downing, his then current spouse. The instructions for the Standard Form (SF) 2801 that Mr. Downing filled out and signed stated:

> The reduction in your annuity to provide a survivor annuity for your current spouse stops if your marriage ends because of death, divorce or annulment. However, you may elect, within 2 years after the marriage ends, to continue the reduction to provide a former spouse survivor annuity for

that person . . . .

On July 22, 2004, Mr. and Ms. Downing signed a separation agreement, referred to as a Qualified Domestic Relations Order ("QDRO"). J.A. 25-32. Thereafter, a divorce decree in October 2006 dissolved the marriage and specifically provided that Ms. Downing would receive "[o]ne-half of the Thrift Savings Plan and [o]ne-half of the Civil Service Retirement benefits for his retirement from the United States Civil Service plus [one-half] of all accrued interest and increase awarded or earned by TSP through the date funds are transferred to [her]." It did not mention any survivor benefits for Ms. Downing after Mr. Downing's death.

In addition to the SF 2801 form that he signed at the time of his retirement, in December 2006 and 2007, Mr. Downing received the annual notice OPM sent to all CSRS annuitants that explained he must make a new survivor annuity election within two years of divorce to provide survivor annuity benefits for a former spouse. J.A. 16-21. These notices contained the following provision:

**Survivor Annuity Election for a Former Spouse**

**Eligibility and Time Limits** – With some exceptions, retirees are eligible to elect or reelect a reduced annuity to provide a survivor annuity for a former spouse if they timely submit an election to OPM 1) within 2 years after the date the marriage ended by divorce or annulment or 2) within 2 years after the date another former spouse loses entitlement to a potential survivor annuity. Please note that a new survivor annuity election is required within 2 years after the divorce if you

wish to provide a former spouse annuity, even if at retirement you elected to provide a survivor annuity for that spouse. The law provides for the continuation of a survivor reduction made at retirement after divorce if the annuitant reelects a survivor annuity for the former spouse within 2 years of the divorce. Continuing the survivor reduction, *by itself*, does not demonstrate an unmistakable intent to make a former spouse survivor election.

J.A. 19, 21. Mr. Downing did not file an election to provide Ms. Downing with a survivor annuity after their divorce.

After Mr. Downing died on March 13, 2008, Ms. Downing filed an application with OPM seeking survivor annuity benefits. OPM denied Ms. Downing's original request as well as her request for reconsideration. Ms. Downing unsuccessfully appealed the reconsideration decision to the Board. The administrative judge concluded that Mr. Downing did not expressly provide survivor annuity or post-death benefits to Ms. Downing in the divorce decree, and even if Mr. Downing intended for Ms. Downing to receive survivor benefits, it is not binding on OPM. Further, he determined that OPM adequately notified Mr. Downing of the requirement that he must file a reelection, but he did not reelect to provide his former wife with survivor benefits within two years of their divorce. Ms. Downing did not appeal this initial decision and it became the final decision of the Board. Ms. Downing timely petitions for review. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).

## DISCUSSION

On appeal, Ms. Downing contends that although the divorce decree was "admittedly poorly written," the QDRO clearly intends for her to receive former spouse survivor annuity benefits and she did not need to use "magic words" to obtain them. She also argues that Mr. Downing did not receive adequate notice because OPM failed to follow its own rules when it continued to withhold amounts from Mr. Downing's annuity payments instead of terminating them upon divorce pursuant to 5 U.S.C. § 8339(j)(5)(A).[1] We address Ms. Downing's arguments in turn. We note, however, that our scope of review is limited. We may only set aside the Board's decision if it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c).

Although Ms. Downing was entitled to survivor annuity benefits as a result of Mr. Downing's election at retirement, that entitlement terminated when the Downings divorced in October 2006. *See* 5 U.S.C. § 8339(j)(5). The law provides that a former spouse of a federal employee is entitled to a survivor annuity if and to

---

[1]  OPM states that it will refund any improperly withheld monies if the survivor annuity is not granted. The dissent states that Mr. Downing paid "the reduced annuity for four years with no notification that there was some sort of flaw in the survivorship election." This is incorrect. OPM properly made deductions in accord with Mr. Downing's election upon retirement until the divorce was final. Therefore, OPM improperly withheld monies for less than two years.

the extent a divorce decree or court order expressly provides for one, 5 U.S.C. § 8341(h)(1), or if the annuitant makes a new election to grant a survivor annuity within two years after the date on which the marriage dissolves. 5 U.S.C. §§ 8341(h)(1), 8339(j)(3).

First, Ms. Downing argues that she did not need to use "magic words" in her QDRO and divorce decree, and Mr. Downing clearly intended to award her former spouse survivor annuity benefits. Section 838.804 of Title 5, Code of Federal Regulations, provides that "[a] court order awarding a former spouse survivor annuity is not a court order acceptable for processing *unless it expressly awards a former spouse survivor annuity or expressly directs an employee or retiree to elect to provide a former spouse survivor annuity*" in that it must identify the retirement system and state that the former spouse is entitled to former spouse annuity or direct the retiree to elect to provide a former spouse survivor annuity pursuant to § 838.912. (Emphasis added). Section 838.912 provides that "[t]he court order must contain language such as 'survivor annuity,' 'death benefits,' 'former spouse survivor annuity under 5 U.S.C. § 8341,' etc." 5 C.F.R. § 838.912. We set forth the framework for analyzing whether a court order without any magic words provides the survivor annuity benefit under § 8341(h)(1) in *Fox v. Office of Personnel Management*, 100 F.3d 141 (Fed. Cir. 1996). The court must first determine whether the order contains a pertinent clause regarding a survivor annuity; second, if such a clause exists, the court "must inquire whether the operative terms in that clause can fairly be read as awarding the annuity"; and third, if it does, the court must "examine any evidence introduced concerning the marriage parties' intent and the circumstances surrounding the execution of the document to interpret the clause." *Hayward v. Office of Pers. Mgmt.*, 578 F.3d 1337,

1345 (Fed. Cir. 2009) (citations and quotations omitted); *see Fox*, 100 F.3d at 146. If there is only one possible meaning for the term, such that it is a CSRS survivor annuity, then it is "expressly provided for" in the court order under § 8341(h)(1). Neither the QDRO nor the divorce decree makes reference to or contains a pertinent clause regarding a survivor annuity for Ms. Downing. Because the court order does not expressly provide Ms. Downing with a former spouse survivor annuity, it is irrelevant that Mr. Downing may have intended otherwise.

Second, there is no dispute that Mr. Downing failed to file an election, providing Ms. Downing with a survivor annuity after their divorce. Ms. Downing argues that she is entitled to survivor annuity benefits because Mr. Downing, who had adult Attention Deficit Hyperactive Disorder, did not receive adequate notice of the requirement to reelect in light of OPM's failure to terminate withholding amounts under 5 U.S.C. § 8339(j)(5)(A), and he intended for her to receive a survivor annuity.

A former spouse may receive survivor annuity benefits in the absence of a new election by the annuitant if (1) the annuitant did not receive the required annual notice of his election rights under 5 U.S.C. § 8339(j), *see* Act of July 10, 1978, § 3, Pub.L. No. 95-317, 92 Stat. 382, amended by Reorganization Plan No. 2 of 1978, § 102, 92 Stat. 3783 (codified as amended at 5 U.S.C. § 8339 note (2006) ("Annual Notice to Annuitant of Rights of Election Under Subsecs. (j) and (k)(2) of This Section")), and (2) "there is evidence sufficient to show that the retiree indeed intended to provide a survivor annuity for the former spouse." *Hernandez v. Office of Pers. Mgmt.,* 450 F.3d 1332, 1334-35 (Fed. Cir. 2006) (quoting *Wood v. Office of Pers. Mgmt.,* 241 F.3d 1364, 1368 (Fed. Cir.

2001)). Under the facts of this case, the first prong is clearly not met. Mr. Downing did receive adequate notice that he was required to reelect with OPM, within two years of the divorce, to provide survivor annuity benefits through the form, SF 2801. *Cf. Simpson v. Office of Pers. Mgmt.*, 347 F.3d 1361, 1365 (Fed. Cir. 2003) (holding that notice is insufficient if it does not make clear that a reelection after divorce is required to provide such an annuity for a former spouse). He filled out and signed this form at the time of his retirement. J.A. 33-34. He also received the annual notices sent to him by OPM in December 2006 and 2007 explaining that he was required to reelect within two years after the divorce to provide a former spouse annuity even though he elected to provide such a survivor annuity at retirement. J.A. 16-21.[2]

---

[2] The dissent argues that the notice Mr. Downing received was insufficient because the informative statement appeared on page six of the instructions for SF-2801. We do not, however, rely on this notice alone. As we have explained, Mr. Downing further received adequate notice through the annual forms sent to Mr. Downing in December 2006 and 2007, which were sent after his divorce was finalized and reminded him that he was required to make a reelection within two years. J.A. 19, 21 ("Please note that a new survivor annuity election is required within 2 years after the divorce if you wish to provide a former spouse annuity, even if at retirement you elected to provide a survivor annuity for that spouse. The law provides for the continuation of a survivor reduction made at retirement after divorce if the annuitant reelects a survivor annuity for the former spouse within 2 years of the divorce."). Indeed, these notices contained precisely the information that the dissent complains was not provided to him. In addition, to the extent that the dissent relies on the "Explanation of Benefits," dated May 2, 2004, to argue that OPM should send individualized notices to annuitants explaining their personal rights and responsibilities, we see no basis for such a requirement.

As the dissent points out, the circumstances of this case are unusual because Mr. Downing made an election for survivor annuity benefits at retirement, after Ms. Downing filed for divorce but more than two years before the divorce became final. In addition, OPM thereafter continued to make deductions from Mr. Downing's annuity even though they should have automatically terminated under 5 U.S.C. § 8339(j)(5)(A). The clear statutory language, however, makes no exception to the requirement that a new election must be made within two years after the marriage dissolves where the employee received adequate notice. *See* 5 U.S.C. §§ 8341(h)(1), 8339(j)(3). Because Mr. Downing received the statutorily required notice and failed to file a new election after the date of their divorce, Ms. Downing is not entitled to a survivor annuity irrespective of Mr. Downing's intent.[3] Accordingly, Ms. Downing fails to establish that she was entitled to survivor annuity benefits.

---

The "Explanation of Benefits" was sent to Mr. Downing more than two years before his divorce was final and properly informed him that upon retirement, he elected to provide survivor benefits to his then current spouse.

[3] The dissent urges that this case presents a question left open by our precedent in *Brush v. Office of Personnel Management*, 982 F.2d 1554, 1558 n.11 (Fed. Cir. 1992), and *Simpson*, 347 F.3d at 1367. Those cases, however, arose in a context in which sufficient notice had not been provided to annuitants. In contrast, there was notice provided to Mr. Downing by way of the form he signed upon retirement while his divorce was pending and two annual notice forms that he received after his divorce was final. We need not reach the issue of intent where the annuitant did receive the required annual notice of his election rights under 5 U.S.C. § 8339(j). *See* 5 U.S.C. § 8339 note.

Because the Board's decision to deny Ms. Downing's request for former spouse survivor annuity benefits was not arbitrary, capricious, or an abuse of discretion, but rather is supported by substantial evidence, we affirm.

## COSTS

Each party shall bear its own costs.

## **AFFIRMED**

# United States Court of Appeals
# for the Federal Circuit

---

**BILLYE D. DOWNING,**
*Petitioner,*

v.

**OFFICE OF PERSONNEL MANAGEMENT,**
*Respondent.*

---

2010-3043

---

Petition for review of the Merit Systems Protection Board in DA0831090342-I-1.

---

NEWMAN, *Circuit Judge*, dissenting.

This is the rare case in which the intention of the divorcing employee is clear, and was clearly recorded in several official documents. The employee Mr. Downing stated on his official retirement form his intention to provide a survivor annuity for Mrs. Downing, although the divorce was already in process. The OPM rules are designed to protect this intention.

All of OPM's requirements for a survivor annuity were met, including payment of the reduced annuity during the retiree's life. The two-year window after the divorce, during which any further paperwork could be filed, had not run when the retiree died. Nonetheless, OPM now invokes rules

that are designed to protect the interests of all concerned, to deprive the survivor of the annuity that was designated by the employee, and recorded with OPM on his retirement form filed seven months into the divorce proceedings. My colleagues now hold that since Mr. Downing died before he repeated this survivorship election, OPM properly can refuse to pay the survivorship annuity. I must, respectfully dissent.

This factual situation is quite different from the usual one, where there is a dispute between past and present surviving spouses of a divorced employee. Here the ailing employee made the formal election of a survivor annuity for his divorcing wife, in writing, on OPM's retirement form, although the divorce procedures were in process. The divorce decree provided that Mr. and Mrs. Downing would split the reduced annuity; no mention was made in the decree of the survivorship arrangement, which had already been officially communicated to OPM. By the time the divorce became final OPM had been paying the reduced annuity for over two and a half years, reduced because of the survivorship election.

The MSPB found "that the appellant notified OPM of the couple's changed marital status after the time of the divorce," slip. op. at 7–8, and OPM does not dispute its "utilization of the court order to award the appellant a portion of Downing's retirement annuity (during his life)," *id.* at 11. This annuity was reduced because of the survivor annuity, and continued to be reduced after the divorce and until Mr. Downing died. However, after his death OPM refused to pay the survivor annuity. OPM states that Mr. Downing was required to make another election to pay a survivorship annuity to Mrs. Downing, within two years after the divorce. Here, Mr. Downing made his intent crystal clear, for he provided the survivor annuity election

while the divorce decree was pending. The rules invoked by OPM are designed to implement the intent of its retiring employee and to protect the interests of all involved, not to provide a mechanism for subverting those interests when upon death any oversight cannot be corrected.

This is not a case of changed circumstances or conflicting claimants. OPM was notified, with the divorce decree, that the reduced annuity should be split between Mr. and Mrs. Downing. OPM complied with this instruction until Mr. Downing died, after paying the reduced annuity for four years with no notification that there was some sort of flaw in the survivorship election. Indeed, since OPM's two-year window after the divorce had not run when Mr. Downing died, there was time to remedy this flaw during the statutory period.

Mr. Downing's death before the two-year window had closed and OPM's continued payment of the reduced annuity after the divorce is precisely the situation that this court has noted "strongly suggests the elements of an estoppel that might be permitted through the crack left in the door by the language in *Office of Personnel Management v. Richmond*, 496 U.S. 414, 423 (1990)." *Brush v. Office of Personnel Mgmt.*, 982 F.2d 1554, 1558 n.11 (Fed. Cir. 1992). Rather than view the lack of a re-election prior to death as fatal to the survivor annuity claim, "[t]he stronger and more plausible inference is that the election he had made, in writing in 1984, and with which he had complied in every respect for five years, in fact became irrevocably restated at the time of his death, which was within the two year period." *Id.* The circumstances of Mr. Downing's election compel the same conclusion. In *Brush*, the court decided the case based on a lack of notice by OPM, and did not rely on this ground.

Similarly in *Simpson v. Office of Personnel Management*, 347 F.3d 1361, 1367 (Fed. Cir. 2003), this court "conclude[d] that all of the notices of record are defective with respect to someone in Mr. Simpson's situation," and that it "need not reach Mrs. Simpson's argument that her ex-husband's death within the two-year period after their divorce resulted in an unequivocal restatement of his pre-divorce election." Though the notices to Mr. Downing were inadequate, for they were buried in fine print and were contravened by OPM's actual payment of the reduced annuity after the divorce, to the extent that precedent establishes that the annual notice sent by OPM in fine print on the back of the cost of living adjustment notification suffices to inform annuitants of critical conditions affecting their annuity elections, it is time to reach the question left open by *Brush* and *Simpson* that is applicable to the unique circumstances of these cases. I would reach that question here and, as in *Brush* and *Simpson*, award Mrs. Downing the annuity in accordance with the clearly expressed and noticed intent of the retiree.[1]

At a minimum, if Mr. Downing erred, so did OPM. Section 8339(j)(5)(A) of 5 U.S.C. provides that "[a]ny reduction in an annuity for the purpose of providing a survivor annuity for the current spouse of a retired employee or Member shall be terminated" after the marriage is dissolved. OPM did not comply with this provision, which could have alerted the Downings to any errors. OPM admits that it continued to pay the reduced annuity after it received a copy of the divorce decree that OPM now states was fatally defective in not reiterating the survivorship election. Nonetheless,

---

[1] It is not clear whether Mr. Downing's personal representative could have renewed the previous election after Mr. Downing's death and within two years of the divorce. If this path had not been made known to the personal representative, a retroactive election may also be available.

when Mr. Downing died, a year and a half after the final divorce decree, OPM refused to pay Mrs. Downing the survivorship annuity. Mr. Downing cannot go back and correct the errors raised by OPM only after his death. This case raises the question of the role of OPM in administering the employment laws fairly and with humanity, in service to those persons who committed their lifetime to federal employment. "The National Government should be a model employer. It should demand the highest quality of service from each of its employees and it should care for all of them properly in return." Pres. Theodore Roosevelt, Seventh Annual Message, Dec. 3, 1907, *available at* http://www.presidency.ucsb.edu/ws/index.php?pid=29548.

My colleagues on this panel stress that OPM annually sends retirees a boiler-plate reminder of matters that may warrant attention. This reminder did not make clear that Mr. Downing was required to make some sort of additional election, for the survivor annuity terms were already in place with OPM, and a reduced annuity was already being paid by OPM. When the employee has chosen to receive a reduced annuity in his lifetime and after his divorce in order to provide for a survivor, OPM's obligation is to assure implementation of the employee's intent.

My colleagues suggest that the retirement form Mr. Downing signed makes clear that he must re-elect the survivor annuity within two years after divorce. *See* Maj. Op. at 2–3, 8. It is far from clear. The statement referred to appears on the sixth page of the ten pages of instructions for Standard Form 2801 and could not reasonably have alerted Mr. Downing to such a critical condition affecting his election, even if these instructions were provided. These instructions are intended to be used to complete the retirement form, not as notice of the need for further action with the final decree or within the ensuing two years.

Unlike *Braza v. Office of Personnel Management*, 598 F.3d 1315 (Fed. Cir. 2010) (en banc), where the court held that the form "is explicit enough for the act of signing the form to evidence agreement with the terms of the form," *id.* at 1320, the face of the form signed by Mr. Downing does not mention that the election will terminate upon divorce.

OPM acknowledged Mr. Downing's election of a survivor annuity in a personalized "Explanation of Benefits," but did not state in that personalized document that his election would be undone by finality of his pending divorce. This "Explanation of Benefits," dated May 2, 2004, contains a section entitled "Survivor Benefits" that lists Mrs. Downing as the recipient of the survivor annuity elected by Mr. Downing:

---

**SURVIVOR BENEFITS**

In the event of your death, your survivors should call our Retirement Information Office at: (1-888) 767-6738. Customers within the local Washington, DC, calling area must call (202) 606-0500.

You elected to provide survivor benefits as follows based upon the full amount of your annuity.

The reduction to provide survivor benefits is made from your basic annual annuity in retirement. There are no separate monthly deductions for providing survivor annuities.

**Surviving Spouse**

Name:                          Billye D.
Social Security Number:        [xxx-xx-xxxx]
Date of Birth:                 [xx/xx/xxxx]

Current Gross Monthly Survivor Annuity:      $2453.00

---

App. to Pet'r's Br., Tab 4, Item No. 3. This notice did not contain the critical information on which OPM now relies, i.e., that the election would be nullified by divorce, although this information could easily have been included in this conspicuous personal notice rather than buried in the fine print of the 10-page general instructions to the retirement form among lots of inapplicable information. OPM was notified of the divorce, and split the (reduced) annuity between Mr. and Mrs. Downing—but gave no notice concerning the need to reiterate the survivor election that supported the reduced annuity. There was no notice that the "irrevocable" survivor annuity election would be revoked unless re-elected, even as OPM continued to implement the election by reducing the annuity that was paid before Mr. Downing's death. Here, there had been an explicit written election at the time of retirement, while the divorce was pending. Mr. Downing's election was irrevocable without Mrs. Downing's consent, and no such consent was manifested, or included in the divorce decree or any other document. OPM's obligation is to give effect to the clear intent of the retiree. Here the intent was clear. OPM's obligation to Mr. Downing, and to all federal employees, is to assure that their intentions on retirement, and upon death, are conscientiously respected and carried out.